Dale E. **JOHNSON,** Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 82A01–0309–CR–366.

Court of Appeals of Indiana.

June 28, 2004.

Transfer Denied Sept. 9, 2004.

Jon Aarstad, Vanderburgh County Public Defender Agency, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Daniel Jason Kopp, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The State charged Dale Johnson with Burglary, as a Class A felony, approximately thirteen years after the alleged offense occurred. Johnson moved the trial court to dismiss the charge alleging that the State's delay in filing it violated his right to due process under the Fifth Amendment to the United States Constitution. Following a hearing, the trial court denied Johnson's motion to dismiss, and Johnson appeals that interlocutory order.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On July 19, 1989, several men entered the unlocked back door of Earl Morgan's apartment in Evansville, and one or more of the men attacked Morgan, inflicting injuries to his head and abdomen. After the men left, Morgan, who was elderly and lived alone, lay on the floor of his apartment for two days before he was able to contact a friend and tell her about the incident. Morgan was taken to the hospi-

tal, where he was diagnosed with a broken nose, a broken rib, dehydration, and pneumonia. Evansville Police Officer Pete Dossett investigated the incident and learned that one or more of the assailants had stolen a watch and a ring from Morgan's apartment. Detective Michael Cook was assigned to the case, but he quickly closed the case because he did not have any suspects or leads. On January 8, 1990, Morgan died at the age of ninety, and there is some evidence that his death might have stemmed from the injuries he received on July 19, 1989.

In 1997, Vicki Sullivan ("Vicki") telephoned the Evansville Police Department to report that her ex-husband, James Sullivan ("Sullivan"), had been involved in a "robbery and murder" of an elderly man several years earlier. Appellant's App. at 14. But the police did not investigate the tip at that time. Then, when Vicki was arrested on an unrelated charge in January 2000, she told her arresting officer, Officer Brian Turpin, the same thing she had reported to police in 1997. Officer Turpin passed on the information to a detective, who looked for an open *murder* case from 1989. When that detective did not find any unsolved murders for that year, she stopped her investigation.

Finally, when Officer Turpin arrested Sullivan on an unrelated charge in June 2002, Sullivan stated that he had information about "an old robbery" some friends of his had committed several years earlier. *Id.* Sullivan proceeded to explain that his friends David Nelson, Keith Wilson, and Johnson conspired to rob Morgan, whom Johnson claimed had "money buried in mason jars" in his basement. *Id.* Sullivan also stated that Johnson was the "mastermind" of the scheme. *Id.*

On July 13, 2002, Officer Turpin interviewed Johnson about the incident. Johnson stated that "he had no memory" of that night, but that he did remember being with Sullivan, Nelson, and a man named "Keith" on the night in question. *Id.* Johnson stated that "he had no reason to rob Morgan as [Morgan] would give Johnson and his ex-wife 'anything [they] asked for.'" [1] *Id.* Officer Turpin then interviewed Johnson's ex-wife, Krista Glenn, who stated that Morgan did not like Johnson and "would not have given him anything." *Id.*

Officer Turpin then interviewed Wilson, who initially denied involvement in the incident, but subsequently admitted that he, Sullivan, and Nelson had met with Johnson to discuss stealing the money allegedly buried in Morgan's basement; Wilson then stated that he, Sullivan, and Nelson broke into Morgan's house, and he searched the basement for money while Sullivan and Nelson were upstairs dealing with Morgan. Wilson told Officer Turpin that Johnson was angry when they subsequently reported to him that they had not found the money in Morgan's basement.

On October 21, 2002, the State charged Johnson with burglary, as a Class A felony, and conspiracy to commit burglary, as a Class A felony. Johnson filed a motion to dismiss the charges on the basis that the thirteen-year delay between the time of the alleged offense and the filing of charges violated his right to due process. Johnson also argued that one of the charges should have been dismissed on double jeopardy grounds. Following a hearing, the trial court granted Johnson's motion with respect to the double jeopardy claim and dismissed the conspiracy to com-

---

1. There is nothing in the record explaining what Johnson's relationship was with Morgan.

mit burglary charge. But the court denied the motion with respect to the alleged due process violation. This appeal ensued.

## DISCUSSION AND DECISION

■ A defendant has the burden of proving, by a preponderance of the evidence, all facts necessary to support a motion to dismiss. *Townsend v. State,* 793 N.E.2d 1092, 1093 (Ind.Ct.App.2003), *trans. denied.* When a party appeals from a negative judgment, we will reverse the trial court's ruling only if the evidence is without conflict and leads inescapably to the conclusion that the party was entitled to dismissal. *Id.*

■ Johnson contends that the State's delay in filing charges against him violated his right to due process under the Fifth Amendment to the United States Constitution. Ordinarily, a charge filed within the statutory limitations period will be considered timely. *Koke v. State,* 498 N.E.2d 1326, 1331 (Ind.Ct.App.1986), *trans. denied.* However, if the prosecution deliberately utilizes delay to strengthen its

position by weakening that of the defense or otherwise impairs a defendant's right to a fair trial, an inordinate pre-indictment delay may be found to violate a defendant's due process rights. *Id.; United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). This court has required the defendant to demonstrate both that he suffered actual prejudice and that there was no justification for the delay in order to successfully raise a due process challenge under the Fifth Amendment.[2] *Koke,* 498 N.E.2d at 1331.

■ Johnson concedes that there is no statute of limitations for filing a Class A felony charge. He claims prejudice, however, in that the passage of time has impaired his ability to prepare a defense. In particular, he asserts that the victim and "several potentially important witnesses" are dead.[3] Brief of Appellant at 25. Johnson does not explain how the dead witnesses' testimony would have helped his defense, but merely states that he "did not have the opportunity to avoid the particu-

---

2. Johnson asks this court to apply Sixth Amendment speedy trial case law to his Fifth Amendment due process claim. He asserts that:

   appellate courts should be prepared, *in a proper case such as Johnson's,* to disregard as a "distinction without a difference" and a mere technicality whether the excessive, unexcused and demonstrably prejudicial delay of which a defendant complains occurred between the alleged offense and the filing of the charging instrument, on one hand, or between the filing of the charging instrument and the defendant's arrest, on the other.

   Brief of Appellant at 20 (emphasis original). In particular, Johnson relies on the Sixth Amendment analysis in *Scott v. State,* 461 N.E.2d 141, 144 (Ind.Ct.App.1984), where this court noted that "a delay [between arrest and trial] may be so prolonged the general presumption [against the mere passage of time as prejudicing a defendant] must fail and be replaced by a presumption of prejudice."

But our holding in *Scott* is not dispositive here.

   In *Patterson v. State,* 495 N.E.2d 714 (Ind. 1986), the State charged the defendant with murder approximately twenty years after the alleged offense, and the defendant contended that the delay violated her Sixth Amendment right to a speedy trial. But our supreme court held that "[t]he Sixth Amendment right to a speedy trial does not apply here, as the delay did not occur after arrest or indictment." *Id.* at 718. We decline Johnson's invitation to apply Sixth Amendment analysis here.

3. Those witnesses are identified as "the victim, the neighbor who discovered him after the offense,' at least one alleged co-conspirator, Johnson's parents, who allegedly provided the police scanner [Johnson] allegedly monitored [during the burglary], and [Johnson's] son, who allegedly knew something [adverse to Johnson] about the alleged offense." Brief of Appellant at 25.

lar prejudice of memory fade or loss by making notes, identifying witnesses and memorializing their recollection, etc."[4] Reply Brief of Appellant at 16. Johnson maintains that the prejudice due to the lack of witnesses is compounded by the fact that police did not perform a thorough initial investigation into the alleged crime. There are no photographs of the crime scene, and the police did not sweep for fingerprints.

We conclude that Johnson has not demonstrated that he suffered actual prejudice by the pre-indictment delay. Johnson asks us to speculate regarding how the deceased witnesses would have helped his defense, which we will not do. Moreover, the delay has not given the State any advantage over Johnson in terms of preparing for trial; Johnson has the same access to the evidence and the surviving witnesses as the State. *See Koke*, 498 N.E.2d at 1331 (stating due process violation will be found where prosecution deliberately strengthens its position by weakening defense).

Regardless, even if Johnson had shown actual prejudice, his due process claim fails because he has not demonstrated that the pre-indictment delay was without justification.[5] *See id.* Johnson asserts that the thirteen-year delay in his prosecution was due to the State's alleged negligence in not diligently pursuing his prosecution. In particular, Johnson maintains that the police were negligent when they failed to act

on Vicki Sullivan's tips prior to 2002. But the State presented evidence that the police did follow up on Vicki's tip in 2000, but were unable to corroborate the tip at that time. Johnson has not shown that the evidence is without conflict and leads to the conclusion that the State's delay in prosecuting him was without justification.

■ It is well-settled that the prosecutor is invested with broad discretion in the decision of such matters as when to prosecute. *Id.* at 1332. We conclude that Johnson has failed to demonstrate that the thirteen-year delay was without justification. The trial court did not err when it denied his motion to dismiss, and we hold that the State's delay in filing charges against Johnson did not violate his due process rights under the Fifth Amendment.

Affirmed.

KIRSCH, C.J., and RILEY, J., concur.

---

4. The record indicates that Johnson allegedly monitored a police scanner during the burglary and that he and his co-conspirators communicated by using walkie-talkies. At the hearing on his motion to dismiss, Johnson alleged that his parents could have "shed some light on the issue of the walkie[-]talkies ... and the [police] scanner [used during the burglary]." Transcript at 54. But that assertion is too vague to support a determination of prejudice.

5. Johnson also claims prejudice in that the delay has resulted in his inability to have the jury instructed on lesser-included offenses, because the applicable statutes of limitation have run. But Johnson does not cite to any authority in support of that contention. And, regardless, we need not address that issue because Johnson has not shown that the State's delay in filing charges against him was without justification. *See Koke*, 498 N.E.2d at 1331.