**Ralph BARNETT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A02–0605–CR–389.

Court of Appeals of Indiana.

May 29, 2007.

John T. Wilson, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Ralph Barnett appeals his conviction for voluntary manslaughter,[1] a Class A felony. Barnett raises two issues on appeal, one of which is dispositive: whether the trial court erred in denying his Motion to Dismiss.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On January 26, 1993, while incarcerated at the Pendleton Correctional Facility (the Facility) in Madison County, Indiana, Barnett got into a physical confrontation with fellow inmate, Ricky Combs. Combs was housed two cells over from Barnett in the G cellblock of the Facility. The fight began when the inmates were released from their cells for a recreation session and Combs threw a hot liquid on Barnett, burning his face and chest. A struggle between the two ensued, and Barnett took a handmade knife (which looks more like a large nail or pick) from Combs. When Barnett began to walk away, Combs came from behind and kicked Barnett in his backside. Barnett reacted by pinning Combs against a nearby gate and stabbing him repeatedly with the knife.

Following notice that a fight had broken out, the Facility guards radioed for assistance and ordered all inmates in the block to return to their cells. Upon securing and screening the cellblock, the guards found Combs bleeding in his cell. After attempting to treat him, the guards called the infirmary, which eventually transported Combs to a nearby hospital where he died as a result of multiple stab wounds. Meanwhile, the guards found Barnett in his cell, upset, and with severe burns on his body. Barnett was taken to the infirmary and questioned, where he claimed he did not mean to kill Combs and explained that on the night before, Combs had threatened to kill him in the morning. When the G block cells were searched, six handmade knives (all similar in style) were recovered. None of them was attributed to a specific cell or inmate.

Thereafter, for more than twelve years, no charges were filed against Barnett in relation to Combs' death. However, on July 7, 2005, under I.C. § 35–42–1–1(1), the State filed an Information charging Barnett with Combs' murder. On February 27, 2006, Barnett filed a Motion to Dismiss on grounds that the State's delay in filing the charge violated his due process rights. On February 28, 2006, the trial court held a hearing on Barnett's Motion to Dismiss. However, the trial

1. *See* IC 35–42–1–3.

court determined that it did not yet have enough evidence before it to decide whether Barnett's right to a fair trial was at risk; therefore, the trial court denied the Motion, but expressed willingness to revisit the issue at a subsequent point in the trial. The case proceeded to jury trial on the same day. At the close of the evidence, the jury found Barnett not guilty of murder, but guilty of the lesser-included offense, voluntary manslaughter, as a Class A felony, IC 35–42–1–3. On March 20, 2006, the trial court sentenced Barnett to thirty years imprisonment.

Barnett now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

■ Asserting that the State's twelve-year delay in prosecuting the case resulted in a denial of his right to a fair trial under the Fifth Amendment of the United States Constitution, Barnett contends that the trial court improperly denied his Motion to Dismiss the murder charge against him because he was unduly prejudiced by the delay.

■ A defendant has the burden of proving, by a preponderance of the evidence, all facts necessary to support a motion to dismiss. *Johnson v. State*, 810 N.E.2d 772, 775 (Ind.Ct.App.2004), *trans. denied.* Because Barnett appeals from a negative judgment, we will reverse only if the evidence is without conflict and leads inescapably to the conclusion that Barnett is entitled to a dismissal. *Id.*

■ Generally, criminal charges filed within the statute of limitations are considered timely. *Id.* Nevertheless, even where charges have been brought within the statutory period, or, as here, where there is no statute of limitations for the charged crime, undue delay in filing charges that causes prejudice to the defendant may constitute a violation of the due process rights of the defendant. *Id.* However, the mere passage of time is not presumed to be prejudicial, and the burden is on the defendant to show that the delay was unduly prejudicial by making specific and concrete allegations of prejudice that are supported by the evidence. *Id.* "[I]f the prosecution deliberately utilizes delay to strengthen its position by weakening that of the defense or otherwise impairs a defendant's right to a fair trial, an inordinate pre-indictment delay may be found to violate a defendant's due process rights." *Id.* at 775. Thus, to be granted relief, the defendant must demonstrate: (1) he suffered actual and substantial prejudice to his right to a fair trial, and (2) the State had no justification for the delay. *Id.*

Barnett argues that an unjust delay by the State in bringing the charge against him impaired his ability to adequately defend himself because several key witnesses had died or were unable to be located for purposes of testifying at his trial. Furthermore, Barnett claims that his ability to cross-examine those witnesses who did testify was greatly diminished by the witnesses' faded memories.

In *Johnson*, the State filed a Class A burglary charge against the defendant approximately thirteen years after the alleged offense occurred. Like the offense of murder, there is no statute of limitations for filing a Class A felony charge. As Barnett did in the instant case, Johnson moved the trial court to dismiss the charge, arguing that the thirteen-year delay violated his right to due process under the Fifth Amendment. *Id.* Also, as with Barnett, Johnson relied on the contention that several potentially important witnesses were dead and that he was prejudiced by the memory loss of witnesses still alive. Determining that Johnson was asking us to speculate as to how the deceased

witnesses would have helped his defense, we held that he had not shown any actual prejudice by the delay, nor had he demonstrated that the pre-indictment delay was without justification. *Id.* at 776. In particular, the evidence showed that investigators received no leads as to who committed the 1989 burglary until 1997, when the Evansville Police Department received a tip from a telephone caller. *Id.* at 774. Nevertheless, the tip was not further investigated or corroborated until 2000 and no charges were filed until 2002. *Id.*

In contrast to *Johnson*, here, there was no further investigation of the incident. Barnett was the only suspect questioned about Combs' death at the time it happened in 1993. No additional evidence was sought or discovered to cause the State to bring charges at anytime after the initial investigation. It is undisputed that Barnett stabbed Combs. The issues are whether Barnett acted in self-defense and whether another inmate (or more than one) with a knife may have also stabbed Combs causing the fatal stab wound.

The record indicates that the original investigator, Detective Michael Minnicus, created a witness list of more than thirty individuals upon his initial investigation of the incident and passed the file on to the prosecutor's office to file a charge within two months of Combs' death. In fact, the record does not show that any follow-up investigation was conducted at that time or at any subsequent time. There was never any attempt to determine the ownership of the other knives or possible participation by other inmates. The autopsy report does not specify whether all the knife wounds (there appear to be at least forty) were caused by the same weapon. Thus, unlike in *Johnson*, the State cannot justify its pre-indictment delay on a lack of information. Furthermore, although there is evidence that the case file shifted between the Facility's investigator, Detective Minnicus, and the prosecutor's office over the years, causing some uncertainty as to who was managing the case, Detective Minnicus testified at the hearing on the Motion to Dismiss that the case had been brought to his attention numerous times between 1993 and 2005. Moreover, ultimately, Detective Minnicus is the investigator who prompted the filing of the charge in 2005— the same investigator who was assigned the case more than twelve years earlier.

Repeatedly throughout the record, the State concedes that the investigators and prosecutors on Barnett's case made a mistake by waiting twelve years to prosecute him. While there is no direct evidence that the delay was intentional, there is no evidence that the delay was justified.

Next, we grapple with the issue of whether Barnett was actually prejudiced by the delay due to missing and deceased witnesses, as well as an inability to effectively cross-examine witnesses. To require that the defendant show more specific prejudice than this would place an impossible burden on the appellant. More prejudice can only be demonstrated by showing what the testimony of those witnesses would have been. It is precisely the lack of this opportunity that prejudices Barnett. Even where there are recorded statements, the potential for prejudice is not foreclosed because of the inability to challenge such statements. The prejudice lies in the defendant's inability to conduct a proper investigation, to interview and depose eyewitnesses, and to prepare a proper defense.

A review of the record indeed shows that a significant number of potential witnesses were deceased by the time Barnett was prosecuted, including: Ron Cook, the chief internal investigator at the Pendleton Correctional Facility; Dr. Chavez and Dr. Denny, the physicians on duty at the Facil-

ity at the time of the incident; Lou Curtis, a nurse, also on duty the morning of Combs' death; Detective Greg Bell, the lead investigator from the Indiana State Police; and Daniel Row, another inmate on the G cellblock who gave a detailed interview about the events surrounding Combs' death. Furthermore, the record discloses that some witnesses, although not deceased, were not located prior to the trial.

Furthermore, our review of the record of the hearing on the Barnett's Motion to Dismiss corroborates Barnett's contention that the passage of time impacted witnesses' recollections. Dennis Fiscus, a Facility guard at the time; Matthew Ray, the Facility's internal affairs investigator at the time; and Enoch Smith, an fellow inmate on the G cellblock in 1993, all testified that they had no recollection of the incident. Thus, there is clearly factual support for Barnett's assertion that witnesses' memories were significantly compromised by the twelve-plus years that passed between Combs' death and Barnett's trial. Barnett contends these facts made it impossible to fully investigate the case and effectively cross-examine the witnesses.

This case can be distinguished from *Johnson* where we held that there was a valid explanation for the delay in filing charges because additional evidence was uncovered years after the original crime. Here, the State, without plausible explanation or justification, delayed for more than twelve years in bringing charges in this case. There is no explanation for why the prosecutor, now deceased, allowed a case to sit in his office for over a year and a half without looking at it or why he returned it to the investigator instead of leaving it for his successor. During this time, a number of key witnesses have died; and several more no longer have any recollection of the events which gave rise to this case. There were apparently at least twenty inmates out of their cells and in the area when the incident occurred. Lack of key witnesses makes it more difficult for Barnett to support his claim of self-defense. Furthermore, in a shakedown of the areas after the incident, six knives were found. There is no evidence of who possessed those knives, no testimony from the person or persons who collected the knives, no DNA testing on the knives, and no medical testimony as to whether more than one knife was used in the stabbing or which knife caused the wound to the stomach which, according to the autopsy report, was the proximate cause of Combs' death.

Here, Barnett was clearly prejudiced by the State's unexplained and unjustified delay—whether intentional or negligent—in bringing charges.

Reversed.

RILEY, J., and FRIEDLANDER, J., concur.