Ronald GLENN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A04–0707–CR–388.

Court of Appeals of Indiana.

April 15, 2008.

Transfer Denied June 12, 2008.

Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Ronald Glenn (Glenn), appeals his convictions for felony murder, Ind.Code § 35–42–1–1(2), and robbery resulting in serious bodily injury, a Class A felony, I.C. § 35–42–5–1.

We affirm in part and remand in part with instructions.

### ISSUES

On appeal, Glenn raises three issues, which we restate as:

(1) Whether the trial court erred in refusing to dismiss the prosecution against Glenn because of the delay in bringing the charges;

(2) Whether the evidence is sufficient to support Glenn's convictions; and

(3) Whether the trial court committed fundamental error in instructing the jury.

In addition, we raise a fourth issue *sua sponte:*

(4) Whether Glenn's convictions and sentences for both felony murder

and robbery resulting in bodily injury violate the prohibition against double jeopardy.

## FACTS AND PROCEDURAL HISTORY

On September 4, 1984, Freddy David (David) was found stabbed to death in his bedroom in the house that he shared with his parents in Martinsville, Morgan County, Indiana. That same day, police found David's pickup within blocks of Glenn's home in Indianapolis. After some investigation by Indianapolis police, Glenn became a "person of interest" in the case. (Transcript p. 521). Over the next several months, police questioned Glenn several times.

On January 16, 1985, Morgan County Sheriff Paul Mason (Sheriff Mason) and Morgan County Sheriff's Department Detective Sergeant Robert Craig (Detective Craig) questioned Glenn. Glenn said that on September 3, 1984, he, Raymond Harris (Harris), and Rodney Jefferson (Jefferson) discussed committing a burglary. Jefferson indicated that he "knew somebody that we could try to get some money from[.]" (State's Ex. 54A, p. 8). Jefferson then made arrangements for the three men to meet David. Glenn said that Jefferson called David at 1:30 or 2:00 p.m. and that it was still "daytime" when David met them. (State's Ex. 54A, p. 9). Jefferson rode with David to David's house in Martinsville, and Glenn and Harris followed in Jefferson's car.

According to Glenn, once the men were inside David's house, Jefferson and Harris went with David into his bedroom in order to "have a sexual relationship[.]" (State's Ex. 54A, p. 14). Meanwhile, Glenn "started going through stuff looking for stuff to take." (State's Ex. 54A, p. 16). Glenn said that he took a watch, silverware, and a camera and went outside to put the items in David's pickup. When he returned to the house, he heard David scream. Glenn went into the bedroom and saw Harris pulling up his pants and Jefferson standing over David, choking him and holding a knife. Jefferson told Glenn to start searching the drawers, and Glenn found a gun, which he said was a "twenty-five automatic". (State's Ex. 54A, p. 33). Jefferson stabbed David several times while Glenn and Harris gathered other items from the house, including a clock radio, necklaces, turquoise rings, and a stereo system. Glenn also stated that before he, Jefferson, and Harris left, Jefferson took an exercise bike from the house and put it in the back of David's pickup. Glenn and Harris left in Jefferson's car, and Jefferson followed them in David's pickup.

Several of Glenn's responses during his January 16 statement were inaccurate. The gun that was actually taken from the house was a small ".22 caliber blue revolver." (Tr. p. 605). Furthermore, when asked during his January 16 statement what had happened to the gun they had taken, Glenn responded that police had stopped him, Jefferson, and Harris and confiscated it. In reality, the incident in which police stopped the three men and confiscated a gun occurred on August 25, 1984, before David's death. Likewise, Glenn stated that the men took a clock radio, necklaces, and turquoise rings from the house, but those items were not included on the David family's list of items allegedly taken. Glenn also stated that he took silverware from a drawer in the kitchen, but the silverware apparently came from a china cabinet in the dining room.

During another statement on January 18, 1985, Glenn told Sheriff Mason and Detective Craig that he had spoken with an Indianapolis detective, who had told him that "he would try to help [Glenn] out" with a separate burglary case in Marion

County if he would assist with the David case in Morgan County. (State's Ex. 57A, p. 44). Sheriff Mason told Glenn, "[Y]ou'll be charged along with the others but if . . . your cooperation can go along [sic] ways and help you when they hand in the results down there concerning this murder." (State's Ex. 57A, p. 45). At that point, however, Glenn was not charged, arrested, or detained in connection with the David case.

At some point, authorities tested the blood of Glenn, Jefferson, and Harris to see if it matched blood found at the scene of the crime that did not belong to David. There were no matches. When confronted with this information, Glenn told police that if they would get him a new trial in the Marion County burglary case, he would tell them "who the fourth person was." (Tr. p. 572). The Morgan County officers did not attempt to get Glenn a new trial. On March 26, 1985, Glenn, who was by that time incarcerated at the Westville Correctional Facility in LaPorte County, Indiana, for the Marion County burglary, told police that he would tell them who the fourth person was if they would get him transferred to the Indiana Youth Center in Plainfield, Indiana. The officers were able to get Glenn transferred.

Thereafter, on April 12, 1985, Sheriff Mason and Detective Craig, along with Morgan County Sheriff's Department Detective Sergeant Robert Betts (Detective Betts), questioned Glenn again. Glenn admitted that he had not been entirely honest in his earlier statements and said that he was ready to be truthful. He said that it was 10:30 or 11:00 p.m. when David picked them up. Also, Glenn reported that Jefferson, not he, took the silverware from the house, and he said (again incorrectly) that the gun they had taken from the house was a "[l]ong silver kind of pistol," (State's Ex. 61A, p. 28), rather than a twenty-five automatic, as he had stated on January 16. Glenn further stated that he could not remember Jefferson taking an exercise bike from the house or anything else about an exercise bike.

Most notably, Glenn claimed that a fourth person, "Michael Smith", went with him, Jefferson, and Harris to David's house. He said that it was "Michael Smith", not Harris, who went into the bedroom with Jefferson and David, and that it was "Michael Smith", not Jefferson, who stabbed David. When asked why he had changed his story, Glenn said, "Well for one, me and Michael, we are closer than [Harris] and them are. And they [Harris and Jefferson] came and got me in the position in a burglary that I didn't really have nothing to do with. Got me twenty years, so I was kind of mad." (State's Ex. 61A, p. 25). However, police were never able to locate the "Michael Smith" identified by Glenn.

Despite Glenn's multiple statements admitting involvement in the crimes against David, Glenn was not charged with any crime at the time, nor were Jefferson or Harris. However, at some point in "the early 2000's," at the urging of a local attorney, Morgan County Sheriff's Deputy Scott Hamilton (Deputy Hamilton) began re-investigating the case. (Tr. p. 703). In 2005, the Indiana State Police Laboratory conducted DNA testing of unidentified blood that had been recovered and preserved during the original investigation. A match was made to a person named Alphonzo Easley (Easley), whose name had never come up in the original investigation. On July 19, 2006, Deputy Hamilton interviewed both Easley and Glenn. Glenn admitted that he had made up the name "Michael Smith" but also denied knowing Easley, and, notwithstanding his 1985 statements, denied any involvement in the David robbery and murder. The

only connection that Deputy Hamilton could find between Easley and Glenn was that they lived within a few blocks of each other in Indianapolis around the time of David's death.[1]

Nonetheless, on September 26, 2006, the State filed an Information charging Glenn with Count I, felony murder, I.C. § 35–42–1–1(2), and Count II, robbery resulting in bodily injury, I.C. § 35–42–5–1. The State also charged Easley in connection with David's death. The trial court eventually allowed Glenn and Easley to be tried separately and granted Glenn's motion for a change of venue because of the extensive publicity in the case.[2] It was determined that while Glenn would still be tried in Morgan County, the case would be tried to a jury from Putnam County.

On May 7, 2007, Glenn's attorney filed two motions to dismiss the prosecution because of the prejudice Glenn allegedly suffered due to the delay in bringing the charges: one based on the delay between the date of the crime and the date he was charged, and one based on the delay between the date Sheriff Mason originally told him he *would be* charged, January 18, 1985, and the date he was charged. After a hearing, the trial court denied both motions.

A jury trial was held May 18–24, 2007. The jury heard audio of Glenn's January 16, January 18, and April 12, 1985, statements and his July 19, 2006, statement, and found him guilty of both felony murder and robbery resulting in serious bodily injury. On June 20, 2007, the trial court imposed sentences of fifty years on each of the Counts but, recognizing a double jeop-ardy problem, found that "the sentence for Count II merges with the sentence imposed in Count I of this case." (Appellant's App. p. 258). As such, he ordered the sentences to run concurrently. However, the trial court entered judgments of conviction for both counts. (Appellant's App. pp. 9, 12, 257).

Glenn now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Motions to Dismiss*

Glenn first argues that the trial court should have dismissed the charges against him because of the delay in prosecution. The defendant has the burden of proving by a preponderance of the evidence every fact essential to support a motion to dismiss. I.C. § 35–34–1–8(f). Because Glenn appeals from a negative judgment, we will reverse only if the evidence is without conflict and leads inescapably to the conclusion that he is entitled to dismissal. *Johnson v. State,* 810 N.E.2d 772, 775 (Ind. Ct.App.2004), *trans. denied.* Glenn contends that the delay in his prosecution violated his rights under two provisions of the United States Constitution: the due process clause of the Fifth Amendment and the speedy trial clause of the Sixth Amendment.[3]

### A. *Due Process*

■ Glenn first claims that the twenty-two-year delay in filing charges violated his due process rights under the Fifth Amendment. The Fifth Amendment provides, in pertinent part: "No person shall

---

1. Easley's statement to police was not entered into evidence at the trial court level.

2. The parties have not indicated to us the outcome and/or status of the prosecution against Easley.

3. In addition to his arguments under the United States Constitution, Glenn asserts that his prosecution violated his rights under Article 1, § 12 of the Indiana Constitution. However, he offers no independent analyses under the Indiana Constitution.

... be deprived of life, liberty, or property, without due process of law...." Generally, statutes of limitations operate as the primary guarantee that stale criminal charges will not be pursued. *Patterson v. State,* 495 N.E.2d 714, 718 (Ind.1986). However, even where a charge is brought within the statute of limitation or, as in the murder case before us, there is no statute of limitation, "the particulars of the case may reveal that undue delay and resultant prejudice constitute a violation of due process." I.C. § 35–41–4–2(a); *Patterson,* 495 N.E.2d at 718. "[I]t is the defendant's burden to prove that undue prejudice arises from the delay." *Patterson,* 495 N.E.2d at 718.

We can make short work of Glenn's due process argument, as our supreme court rejected the same claim in a substantially similar factual setting in *Crawford v. State,* 669 N.E.2d 141 (Ind.1996). In *Crawford,* the defendant claimed that a thirty-year delay in trying him for murder violated his due process rights. Our supreme court noted that the defendant had made three confessions to three different law enforcement agencies and that those confessions more than overcame any prejudice that may have resulted from the delay. *Id.* at 147. The same rationale applies to Glenn's due process claim. Glenn detailed his participation in the crimes against David in multiple statements to police, and those statements were the primary evidence against Glenn at trial. As in *Crawford,* Glenn's statements more than overcame any prejudice that may have resulted from the delay.

We note Glenn's argument that we should presume prejudice based upon the sheer length of the delay in his prosecution, citing *Scott v. State,* 461 N.E.2d 141

(Ind.Ct.App.1984). In *Scott,* we said that there is a general presumption against the mere passage of time as prejudicing a defendant, but that a delay "may be so prolonged the general presumption must fail and be replaced by a presumption of prejudice." *Id.* at 143–44. However, *Scott* concerned a speedy trial claim under the Sixth Amendment, rather than a due process claim under the Fifth Amendment. *Id.* at 142–43. Our supreme court reiterated in *Crawford* that for purposes of the due process clause, "the mere passage of time is not presumed to be prejudicial, and it is the defendant's burden to prove that undue prejudice arises from the delay." 669 N.E.2d at 147 (quoting *Patterson,* 495 N.E.2d at 718).

Glenn's reliance upon our recent decision in *Barnett v. State,* 867 N.E.2d 184 (Ind.Ct.App.2007), *trans. denied,* is also unavailing. In *Barnett,* the defendant, a prison inmate, argued that his defense in a prosecution for the murder of a fellow inmate [4] was impaired by a twelve-year delay because (1) several key witnesses had died or were unable to be located for purposes of testifying at trial and (2) his ability to cross-examine those witnesses who did testify was greatly diminished by the witnesses' faded memories. These changes were particularly significant in light of the two defenses advanced by Barnett: (1) that he acted in self-defense and (2) that one or more other inmates stabbed the victim, Combs, causing the fatal wound. *Id.* at 187. We observed:

> There were apparently at least twenty inmates out of their cells and in the area when the incident occurred. Lack of key witnesses makes it more difficult for Barnett to support his claim of self-defense. Furthermore, in a shakedown

---

4. Though Barnett was charged with and tried for murder, the jury found him guilty of the lesser-included offense of voluntary manslaughter. *Barnett,* 867 N.E.2d at 186. This fact had no effect on our analysis.

of the areas after the incident, six knives were found. There is no evidence of who possessed those knives, no testimony from the person or persons who collected the knives, no DNA testing on the knives, and no medical testimony as to whether more than one knife was used in the stabbing or which knife caused the wound to the stomach which, according to the autopsy report, was the proximate cause of Combs' death.

*Id.* at 188. We concluded that Barnett was "clearly prejudiced" by the delay. *Id.*

In Glenn's case, as in Barnett's, certain evidence was lost over the years: (1) Detective Craig died; (2) Detective Betts' notes, Detective Betts' report, Sheriff Mason's report, the murder weapon, the crime scene video, and tapes of some of Glenn's statements were lost; and (3) police were unable to locate Raymond Harris. However, Glenn, unlike Barnett, did not identify any specific defense theory that was prejudiced by the loss of evidence. Delay and missing evidence can hurt the prosecution just as much as, if not more than, it hurts the defense. *See State v. Azania,* 865 N.E.2d 994, 1010 (Ind.2007) ("[D]elay is a two-edged sword. It is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry out this burden.") (quoting *United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986)), *aff'd on reh'g.* As we noted in *Barnett,* the burden is on the defendant to make "specific and concrete allegations of prejudice that are supported by the evidence." *Id.* at 186. Glenn has failed to do so.

### B. *Speedy Trial*

■ Glenn also claims that he was denied his right to a speedy trial under the Sixth Amendment. The Sixth Amendment provides, in pertinent part: "In all crimi-

nal prosecutions, the accused shall enjoy the right to a speedy and public trial...." In *Doggett v. United States,* 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the United States Supreme Court noted that this right is "triggered by arrest, indictment, or other official accusation[.]" While Glenn acknowledges that he was not arrested or charged until late September of 2006, he contends that he was "officially accused" during the January 18, 1985, police interview, when he was told, "[Y]ou'll be charged along with the others but if ... your cooperation can go along [sic] ways and help you when they hand in the results down there concerning this murder." (State's Ex. 57A, p. 45). We disagree.

In support of his argument that the above statement amounted to an "official accusation", Glenn relies upon our decision in *Danks v. State,* 733 N.E.2d 474 (Ind.Ct. App.2000), *trans. denied.* In *Danks,* however, we merely assumed, for purposes of our speedy trial analysis, that the defendant was "officially accused" as of the date on which he was detained in jail. *Id.* at 481–82. Glenn was not jailed or otherwise detained in connection with the David case either before or after the January 18, 1985, police interview. He was only questioned. The United States Supreme Court has held that "it is either a formal indictment or information *or else the actual restraints imposed by arrest and holding to answer a criminal charge* that engage the particular protections of the speedy trial provision of the Sixth Amendment." *U.S. v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (emphasis added). Because Glenn has not demonstrated that he suffered any of the actual restraints of a criminal charge until September 2006, we cannot say that his Sixth Amendment right to a speedy trial was implicated.

## II. *Sufficiency of the Evidence*

 Next, Glenn argues that the evidence is insufficient to support his conviction for felony murder.[5] Generally, in addressing a claim of insufficient evidence, an appellate court must consider only the probative evidence and reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, and determine therefrom whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Fajardo v. State,* 859 N.E.2d 1201, 1208 (Ind.2007), *superseded by statute on other grounds.* Under the charging information and the felony murder statute, as it existed in 1984, the State was required to prove that Glenn killed another human being while committing robbery. I.C. § 35–42–1–1(2).[6] A felony murder conviction requires proof of intent to commit the underlying felony but not of intent to kill. *Luna v. State,* 758 N.E.2d 515, 517 (Ind.2001). "Furthermore, a person is subject to conviction for felony murder based on accomplice liability for the underlying offense." *Id.* (citing I.C. § 35–41–2–4). As such, even if Glenn did not physically kill David, he can be convicted of felony murder if there is proof that he participated, either directly or as an accomplice, in the underlying robbery.

 As Glenn notes, the State's case against him was based on statements he made to police in 1985. Glenn contends that those statements are insufficient to support his convictions because they contained inaccuracies and inconsistencies. He urges us to apply the incredible dubios-

ity rule to his statements. Under this rule, a court will impinge on the jury's responsibility to judge the credibility of a witness when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Tillman v. State,* 642 N.E.2d 221, 223 (Ind.1994). Application of this rule is limited to cases where a sole witness presents inherently contradictory testimony and there is a complete lack of circumstantial evidence of the appellant's guilt. *Id.* The standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *Fajardo,* 859 N.E.2d at 1208.

To be sure, Glenn's 1985 statements to police contained several inaccuracies and inconsistencies. Glenn wavered as to what type of gun they had taken, what happened with the gun after they took it from the house, the exact items taken from the house, the locations from which certain items were taken, who took what, and the exact timing of the events that day. Glenn also changed his story with regard to the parties involved and their level of involvement. Specifically, in his January 16 statement, he said that he, Jefferson, and Harris went to David's house and that Jefferson stabbed David, but in his April 12 statement, Glenn said that a person named "Michael Smith" was with them and that he was the one who stabbed David.

Nonetheless, Glenn was consistent in the 1985 statements with regard to his involvement in David's death. He, Jefferson, and Harris (and possibly "Michael Smith") wanted to rob somebody. Jefferson called

---

**5.** Glenn actually challenges the sufficiency of the evidence supporting both of his convictions, but because we vacate his conviction for robbery resulting in serious bodily injury on double jeopardy grounds in Section IV of this opinion, we only address his felony murder conviction.

**6.** Indiana Code § 35–42–1–1 has been amended several times since 1984, but none of those amendments is relevant to this case.

David. David went to Jefferson's house. All of the men drove from Indianapolis to David's house in Martinsville. Once at David's house, David went into his bedroom with Jefferson and either Harris or "Michael Smith" while Glenn alone, or Glenn and Harris, searched for things to take with them. Either Jefferson or "Michael Smith" stabbed David. Then the men loaded the stolen items into Jefferson's car and David's pickup and drove back to Indianapolis.

Again, we have found an Indiana Supreme Court case on point. In *Whedon v. State*, 765 N.E.2d 1276 (Ind.2002), most of the evidence in a murder case consisted of the testimony of several witnesses regarding admissions made by the defendant of her involvement. The defendant had variously stated that: (1) she hit the victim in the head with a brick; (2) she held the victim down while someone else hit her in the head; (3) she watched someone else hold down the victim as a man named "Darrell" beat the victim in the head with a brick; (4) she was just a look-out; and (5) she helped hide the body. The defendant urged the application of the incredible dubiosity rule, arguing "that the various statements attributed to her showed inherent material contradictions and vacillation." *Id.* at 1278. Our supreme court rejected her argument, noting that "[w]hile the details and extent of the admissions vary, her statements were consistent that she was involved in the killing." *Id.*

The same is true of Glenn. While some of the details in his 1985 statements varied, those statements were consistent that he was at David's house when David was stabbed and that he was involved in the robbery. Glenn makes no claim that those statements were coerced or otherwise invalid. This evidence is sufficient to satisfy the statutory elements of felony murder. *See* I.C. § 35–42–1–1(2).

■ Still, Glenn would have us hold that he should not be believed even as to the details upon which he was consistent in his 1985 statements because he was simply telling police what they wanted to hear in exchange for leniency in the Marion County burglary case. He notes that he told Deputy Hamilton as much in his 2006 statement, in which he denied any involvement in the David incident. But it was the responsibility of the jury, which heard audio of the statements, to determine whether to believe Glenn's 1985 statements or his 2006 statement. The incredible dubiosity rule applies only when a witness contradicts himself in a single statement or while testifying, not to conflicts between multiple statements. *See, e.g., Tillman*, 642 N.E.2d at 223 ("Application of this rule is limited to cases where a sole witness presents *inherently* contradictory testimony[.]"); *see also Buckner v. State*, 857 N.E.2d 1011, 1018 (Ind.Ct.App.2006) ("The incredible dubiosity rule applies to conflicts in trial testimony rather than conflicts that exist between trial testimony and statements made to the police before trial."). Though Glenn did not testify at trial here, the same rationale applies to his multiple pretrial statements: while Glenn changed his story between the 1985 statements, on the one hand, and the 2006 statement, on the other, none of the statements was inherently contradictory. In such a case, it is the jury's province to decide which statement to believe. *See Holeton v. State*, 853 N.E.2d 539, 542 (Ind. Ct.App.2006) (noting that such discrepancies go to weight of testimony and credibility of witness but do not render such testimony incredibly dubious). The evidence is sufficient to support Glenn's conviction for felony murder, and his resort to the incredible dubiosity doctrine is without merit.

### III. *Jury Instruction*

 Glenn also argues that the trial court erred in instructing the jury. It is well-established that instructing the jury is within the sole discretion of the trial court. *White v. State,* 846 N.E.2d 1026, 1032 (Ind. Ct.App.2006), *trans. denied.* As such, we will reverse a trial court's decision regarding jury instructions only for an abuse of that discretion. *Forte v. State,* 759 N.E.2d 206, 209 (Ind.2001). Before a defendant is entitled to a reversal, he must affirmatively show that the instructional error prejudiced his substantial rights. *Hancock v. State,* 737 N.E.2d 791, 794 (Ind.Ct.App. 2000).

 Glenn contends that the trial court abused its discretion in giving Final Instruction 19, which provided: "A jury may find the defendant guilty of felony murder even if the killing actually occurred before the robbery. When the killing and robbery are so closely related as to be seen as one continuing act, they cannot be separated to place the killing outside the robbery." (Appellant's App. p. 238). Glenn concedes that his trial counsel did not object to the giving of this instruction. As such, he has waived review of the issue, and he must instead establish that the giving of the instruction constituted fundamental error. *See Ortiz v. State,* 766 N.E.2d 370, 375 (Ind.2002) ("The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal."). Fundamental error is error that results in "a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process." *Id.*

We are skeptical of an instruction that informs the jury that it "cannot" separate the killing from the robbery in a prosecution for felony murder, even where the instruction limits itself to situations in which the acts "are so closely related as to be seen as one continuing act[.]" Article I, § 19 of the Indiana Constitution provides: "In all criminal prosecutions whatever, the jury shall have the right to determine the law and the facts." Even the case the State cited in tendering the instruction does not use the word "cannot". In *Jackson v. State,* our supreme court merely said that "[w]hen a killing and a robbery are so closely related in time, place, and continuity of action as to constitute one continuous transaction, a jury is *justified in finding* that the perpetrator is guilty of felony murder even if the killing actually occurred before the robbery." 597 N.E.2d 950, 960 (Ind.1992) (emphasis added), *reh'g denied, cert. denied,* 507 U.S. 976, 113 S.Ct. 1424, 122 L.Ed.2d 793 (1993).

 Nonetheless, any error in the giving of Final Instruction 19 was not fundamental. There was no evidentiary dispute, let alone a serious one, concerning the timing of the killing versus the robbery. Furthermore, Glenn makes no argument on appeal, and from what we can tell made no argument during trial, that David was not killed "while" the men were committing the robbery, as required by the felony murder statute. *See* I.C. § 35–42–1–1(2). The sole dispute was whether Glenn was involved. Therefore, while we caution trial courts and criminal practitioners to avoid instructing juries in such restrictive terms, we conclude that any error in this case did not deprive Glenn of fundamental due process.

### IV. *Double Jeopardy*

 Finally, we address, *sua sponte,* the rule that it is a violation of double jeopardy to convict and sentence a defendant for both felony murder and the underlying robbery because the conviction for felony murder could not be had without proof of robbery. *Moore v. State,* 652

N.E.2d 53, 59 (Ind.1995), *reh'g denied;* *Sanchez v. State,* 794 N.E.2d 488, 491 (Ind. Ct.App.2003), *trans. denied.* Here, the trial court recognized the double jeopardy problem and sought to avoid it by finding that "the sentence for Count II merges with the sentence imposed in Count I of this case." (Appellant's App. p. 258). However, the record reveals that the trial court did enter judgments of conviction for both Counts. (Appellant's App. pp. 9, 12, 257). Likewise, both the abstract of judgment and the transcript of the sentencing hearing indicate that the trial court imposed fifty-year sentences for each Count and ordered them to run concurrently. (Appellant's App. p. 12; Tr. p. 925). We must therefore remand this cause to the trial with instructions to vacate the conviction and sentence for robbery resulting in serious bodily injury. *Cf. Green v. State,* 856 N.E.2d 703, 704 (Ind.2006) (finding no double jeopardy problem where judge's statement at sentencing, abstract of judgment, and sentencing order all demonstrated that conspiracy to commit robbery charge was merged, rather than reduced to judgment, and that defendant was never sentenced for that count).

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in refusing to dismiss the prosecution against Glenn based on the delay in bringing charges, the evidence is sufficient to support Glenn's conviction for felony murder, and the trial court did not commit fundamental error in instructing the jury. However, we find that Glenn's convictions and sentences for both felony murder and robbery resulting in bodily injury violate the prohibition against double jeopardy. We therefore remand this cause to the trial court with instructions to vacate Glenn's conviction and sentence for robbery resulting in bodily injury.

Affirmed in part and remanded in part with instructions.

KIRSCH, J., and MAY, J., concur.