## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 06 2017, 10:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Bates, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | April 6, 2017 <br><br> Court of Appeals Case No. <br> 49A05-1606-CR-1321 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Kurt M. Eisgruber, Judge <br><br> Trial Court Cause No. <br> 49G01-1407-MR-33883 |

**Crone, Judge.**

# Case Summary

James Bates appeals his convictions for murder and class A misdemeanor carrying a handgun without a license. He asserts that the trial court erred in denying his pretrial motion to dismiss the charges against him. We affirm.

# Facts and Procedural History

The facts most favorable to the convictions indicate that shortly after midnight on December 28, 2007, Kenneth Beeler, Tawana Pannell, and their two teenaged sons were watching television in the family room of their home when Bates knocked on their front door. Kenneth Beeler called out "who is it?" and Bates responded, "James." Tr. Vol. 1 at 34, 38, 180. Bates was friends with Beeler and had spent time at Beeler's house with the family less than a week prior. Beeler and one of his sons, Kenneth, Jr., answered the door. When Beeler opened the door, Bates called Beeler a "mother f\*cker" and started shooting. *Id*. at 40. As Beeler and Kenneth, Jr., turned and ran from the door into the house, Bates shot Beeler in the back. After he was shot, Beeler said to Pannell, "Call the police, James just shot me." *Id*. at 42. Beeler later died at the hospital.

On December 31, 2007, the State charged Bates with murder, class D felony criminal recklessness, and class A misdemeanor carrying a handgun without a license. After multiple continuances requested by both parties and granted by the trial court, on May 15, 2009, Bates moved for a speedy trial. On May 29,

2009, the State arranged for Pannell to take a polygraph with examiner Michael Turk. Pannell answered "yes" to the following three questions:

> 1. Regarding the shooting, do you know for sure it was James Bates['s] voice at the door?
>
> 2. Regarding the shooting, have you been completely truthful with the police?
>
> 3. Did James Bates call you on your cell phone when the detectives were on the scene?

Defendant's Ex. G. In his report prepared contemporaneously with the polygraph, Turk stated that he observed "significant reactions" that "indicate[d] deceptive responses" to those three questions. *Id.* He noted that during the post-test interview when he informed Pannell of her reactions to those questions, she stated "that she wasn't completely sure that it was James Bates['s] voice at the door" and that "is what bothered her about that question" as well as "the question regarding the cell phone call." *Id.* Accordingly, Turks recorded the results of the polygraph examination as "INCONCLUSIVE." *Id.* Shortly thereafter, on June 2, 2009, the State dismissed the charges and Bates was subsequently released from jail.

[4] In the summer of 2009, Bates told Summer Castillo that he had robbed a drug dealer with a man who would not give Bates his share of the money, so Bates knocked on the man's door and shot him. Apparently, Castillo's ex-boyfriend, Harold Buntin, was already aware of this information because he had talked to Bates the day after the shooting. Bates told Buntin that he and Beeler had

robbed someone and Beeler did not give Bates his share of the money, so Bates shot him. In the summer of 2010, Bates also told his friend Matthew Dickerson that he had shot a man.

[5] In 2013 and 2014, Castillo had a welfare fraud case pending. She told her attorney about her conversation with Bates, who in turn reported it to authorities. Indianapolis Metropolitan Police Department Detective David Ellison of the cold case homicide unit began reviewing Beeler's murder case and interviewed Pannell and Beeler's two sons. He also interviewed Castillo, Buntin, and Dickerson.

[6] On July 2, 2014, the State charged Bates with Beeler's murder and class A misdemeanor carrying a handgun without a license based upon the same facts underlying the original charges. Again, multiple motions for continuances were filed by both parties and granted by the trial court. On November 24, 2015, Bates filed a motion to dismiss the charges against him asserting that the State's delay in prosecuting him for his crimes violated his due process and speedy trial rights. Following an evidentiary hearing, the trial court denied the motion. Bates sought permission to seek an interlocutory appeal which was denied by the trial court.

[7] A bench trial was held in April 2016. The trial court found Bates guilty as charged and sentenced him to an aggregate sentence of sixty years. This appeal ensued. We will provide additional facts in our discussion as necessary.

# Discussion and Decision

[8] Bates challenges the trial court's denial of his pretrial motion to dismiss the charges against him. "A defendant has the burden of proving, by a preponderance of the evidence, all facts necessary to support a motion to dismiss." *Barnett v. State*, 867 N.E.2d 184, 186 (Ind. Ct. App. 2007), *trans. denied*. Because Bates now appeals from a negative judgment, we will reverse only if the evidence is without conflict and leads inescapably to the conclusion that he is entitled to a dismissal. *Id*.

## Section 1 – Bates has not met his burden to establish that the State violated his due process rights.

[9] Bates first argues that the five-year delay between the State's dismissal of his original charges and the refiling of those charges violated his due process rights, and that the trial court erred in denying his motion to dismiss on those grounds.[1] Our supreme court recently explained,

> Although the prosecution can exercise discretion on when to bring charges, that discretion is not unlimited. The United States Supreme Court has recognized that a pre-indictment delay in prosecution can result in a Due Process Clause violation. Although statutes of limitations often operate to prevent too much delay before criminal charges are brought, "even where a charge is brought within the statute of limitations, the particulars of the case may reveal that undue delay and resultant prejudice

---

[1] The State initially charged Bates with Beeler's murder, criminal recklessness, and carrying a handgun without a license on December 31, 2007, but dismissed those charges after 519 days, on June 2, 2009. The State refiled the murder and carrying a handgun charges on July 2, 2014.

constitute a violation of due process." Despite this, the passage of time alone is not enough to establish prejudice. If it were, then the Constitution would serve as a functional statute of limitation. Rather, the defendant has the burden of proving that he suffered "actual and substantial prejudice to his right to a fair trial," and upon meeting that burden must then demonstrate that "the State had no justification for delay," which may be demonstrated by showing that the State "delayed the indictment to gain a tactical advantage or for some other impermissible reason."

*Ackerman v. State*, 51 N.E.3d 171, 189-90 (Ind. 2016) (citations omitted), *cert. denied*.

[10] Bates acknowledges that this Court has upheld a pre-indictment delay of twenty-two years, *see Glenn v. State*, 884 N.E.2d 347 (Ind. Ct. App. 2008), *trans. denied*, and that our supreme court has upheld a delay of thirty years, *see Crawford v. State*, 669 N.E.2d 141 (Ind. 1996), such that the five-year delay between the dismissal of the original murder charges here and the refiling of those charges "may not appear so prejudicial." Appellant's Br. at 13. Indeed, when an especially egregious offense, such as murder, carries no statute of limitation, "it is inevitable that at times lengthy delays will occur …." *Ackerman*, 51 N.E.3d at 190. Moreover "[t]he mere passage of time is not presumed to be prejudicial, and to satisfy the threshold burden of prejudice, a defendant must make specific and concrete allegations of prejudice that are supported by the evidence." *Allen v. State*, 813 N.E.2d 349, 366 (Ind. Ct. App. 2004), *trans. denied*. Bates maintains that he suffered actual and substantial prejudice for multiple reasons including: (1) the memory of his alibi witness, Chloe Walker, had faded; (2) the recording of Pannell's polygraph was not

preserved; (3) the crime scene had been destroyed so bullet trajectory testing could not occur.

[11] Regarding the faded memory of his alibi witness, Bates claims that although when she was originally interviewed five days after the murder Walker stated that Bates was at her apartment the night of the shooting, by the time of trial, she could not remember the specific date. However, our review of the trial record reveals that Walker's memory regarding the specific date was adequately refreshed by reference to her original statement, and that she stood by her prior statement such that we fail to see how Bates's alibi defense was weakened in any way. Indeed, even during her original statement, Walker admitted that Bates was still awake when she went to sleep around 11:00 p.m. and that she could not account for his whereabouts at 1:00 a.m., the approximate time Beeler was shot. Thus, other than the specific date for which her memory was refreshed, Walker never provided a solid alibi for Bates at the actual time of the murder. Bates has not demonstrated that Walker's faded memory caused him actual and substantial prejudice.

[12] As to the absence of the recording of Pannell's 2009 polygraph, again Bates has not established prejudice. Bates claims that, without the recording, he could not effectively impeach Pannell at trial when she denied admitting to polygraph examiner Turk that she "wasn't completely sure that it was [Bates's] voice at the door." Tr. Vol. 1 at 56. He also points to the fact that, due to the passage of time, Turk testified that he no longer had independent recollection of the exact words used by Pannell when she made such admission. Be that as it may,

Turk's contemporaneous report referencing Pannell's admission was preserved and available during trial, *see* Defendant's Ex. G, and Bates was permitted to and did challenge the credibility of Pannell's trial testimony by referring to her statement in the report and its inconsistencies with her trial testimony. Tr. Vol. 2 at 365. We note that this was a bench trial, and Bates has not explained (nor will we speculate) how he would have fared better before the court with the recording of Pannell's exact words. Bates has not shown that he was actually and substantially prejudiced by the absence of the recording.

[13] Bates's final assertion that he was prejudiced by his inability to conduct bullet trajectory testing because the crime scene was destroyed is similarly unavailing because he fails to explain how that evidence would have benefitted him. As noted above, "a defendant must make specific and concrete allegations of prejudice that are supported by the evidence." *Allen*, 813 N.E.2d at 366.[2] Bates has not met his burden to establish actual or substantial prejudice to his right to a fair trial.

[14] Even assuming Bates could establish that the five-year delay in prosecution resulted in actual and substantial prejudice, he has failed to prove that the State had no justification for delay, or gained some tactical advantage due to the delay. The central contested issue in this case was the identity of the individual who shot Beeler. The State originally dismissed the charges against Bates

---

[2] Bates makes brief reference to "other evidence" that was destroyed or cannot be located but he fails to identify any specific evidence or how he was prejudiced by the absence of such evidence. Appellant's Br. at 15. Accordingly, we decline to discuss it further.

simply because the credibility of its key identification witness, Pannell, was called into question by the results of her polygraph, which indicated that she was not confident in her identification of Bates as the person whose voice she heard at the door and who shot Beeler. The State determined that it did not have enough credible evidence identifying Bates as the shooter to proceed to trial. However, once Castillo came forward regarding her conversation with Bates, the State had reason to reopen its investigation, which led to Buntin and Dickerson, giving the prosecution three additional witnesses identifying Bates as the shooter.

[15] In other words, because a witness possessing credible and corroborated information unexpectedly came forward five years after the original charges were dismissed, we cannot say that the State's delay in prosecution lacked justification. Indeed, under the circumstances presented, "it does not appear that 'the prosecution deliberately utilize[d] delay to strengthen its position by weakening that of the defense ....'" *Ackerman*, 51 N.E.3d at 193 (quoting *Schiro v. State*, 888 N.E.2d 828, 834 (Ind. Ct. App. 2008), *trans. denied*). Rather, new information came to light which gave the State additional evidence identifying Bates as the shooter. Bates has failed to establish that the State had no justification for delay, or gained some tactical advantage due to the delay. In sum, Bates has failed to establish that the prosecutorial delay rose to the level of a due process violation. The trial court properly denied his motion to dismiss on that basis.

## Section 2 – Bates has not met his burden to establish that the State violated his right to a speedy trial.

[16]    Bates next argues that he was entitled to dismissal of the charges against him because the State violated his right to a speedy trial under both the federal and state constitutions. The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ...." Article 1, Section 12 of the Indiana Constitution states, in applicable part, that "[j]ustice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." The speedy trial right is "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Ewell*, 383 U.S. 116, 120 (1966).

[17]    Bates points to his "18 months in jail" before the State dismissed his original charges and the "five years" between the dismissal and refiling of charges as the relevant time for us to consider regarding whether he was denied his speedy trial right. Appellant's Br. at 17. However, as noted by the State, the United States Supreme Court has observed that "[o]nce charges are dismissed, the speedy trial guarantee is no longer applicable" because "'a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer.'" *United States v. MacDonald*, 456 U.S. 1, 8-9 (quoting *United*

*States v. Marion*, 404 U.S. 307, 321 (1971)). Here, the State dismissed the original charges in 2009 and Bates was released from jail and was no longer the subject of public accusation until charges were again filed in 2014. Accordingly, Bates's current speedy trial right did not attach until charges were filed in July 2014, *see Crawford*, 669 N.E.2d at 145,[3] and contrary to Bates's contention, the time before the State's refiling of the charges is not relevant to his current speedy trial claim. *See MacDonald*, 456 U.S. at 8.[4] Thus, the only relevant time here is the 649 days between when charges were refiled on July 2, 2014, and his trial on April 11, 2016.

[18] Our supreme court recently reiterated that "[i]n evaluating both federal and Indiana constitutional speedy trial claims, courts balance the same four factors: (1) the length of the delay; (2) the reason for delay; (3) the defendant's assertion of the right to a speedy trial; and (4) any resulting prejudice to the defendant." *Griffith v. State*, 59 N.E.3d 947, 955 (Ind. 2016) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and *Sweeney v. State*, 704 N.E.2d 86, 102 (Ind. 1998), *cert denied* (1999)). Turning to these factors, we note that while a delay of 649 days, even for a murder trial, is substantial, the record indicates that Bates was the primary reason for the delay. He requested five continuances in a row, causing a full year of delay. In contrast, the State moved for only one continuance after Bates

---

[3] "It has long been the law that a defendant's speedy trial rights do not attach until the filing of a formal indictment or information or until actual restraints are imposed by an arrest and holding to answer a criminal charge." *Crawford*, 669 N.E.2d at 145.

[4] "Any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause." *MacDonald*, 456 U.S. at 8.

filed a belated notice of alibi. Bates also moved for a sixth continuance and sought an extension of time even after he had filed his motion to dismiss the charges. As for his assertion of his speedy trial right, although Bates did move for a speedy trial back in 2009, he did not make the same request when charges were filed in 2014. Indeed, he did not assert his speedy trial right until he filed the motion to dismiss on November 24, 2015, and, as we already noted, he moved for an additional continuance and sought an extension of time after that date. Finally, and most significantly, Bates fails to develop any argument that he was prejudiced by the 649-day delay.[5] Under the circumstances, we conclude that Bates was not deprived of his right to a speedy trial and the trial court did not err in denying his motion to dismiss.

[19]     Affirmed.

Riley, J., and Altice, J., concur.

---

[5] Bates's argument as to prejudice concentrates solely on the five-year delay between dismissal of the original charges and the current charges. Appellant's Br. at 18. As we already determined, the time before the State refiled the charges is irrelevant to his speedy trial claim. *See MacDonald*, 456 U.S. at 8-9.