### Anastazia SCHMID, Appellant–Defendant,

v.

### STATE of Indiana, Appellee–Plaintiff.

### No. 79A02–0212–CR–995.

Court of Appeals of Indiana.

March 2, 2004.

Transfer Denied May 7, 2004.

Bruce W. Graham, Lafayette, IN, Attorney for Appellant.

Stephen R. Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Anastazia Schmid appeals her convictions of battery by means of a deadly weapon, a Class C felony, Ind.Code § 35–42–2–1; criminal recklessness by means of a deadly weapon, a Class C felony, Ind.Code § 35–42–2–2; two counts of criminal recklessness, a Class D felony, Ind.Code § 35–42–2–2; aggravated battery, a Class B felony, Ind. Code § 35–42–2–1.5; battery resulting in serious bodily injury, a Class C felony, Ind.Code § 35–42–2–1; and murder, a felony, Ind.Code § 35–42–1–1.

We affirm.

### ISSUES

Schmid presents four issues for our review which we restate as:

I. Whether the trial court erred by denying Schmid's motion to continue.

II. Whether there was sufficient evidence to support Schmid's convictions.

III. Whether the trial court erred by admitting the testimony of the State's expert witness.

IV. Whether the trial court erred by refusing to give Schmid's instruction.

### FACTS AND PROCEDURAL HISTORY

Schmid has an extensive history of psychological problems that began when she was a young girl. By 2001, when she was twenty-eight years of age, she had been married and divorced and was living with her boyfriend, Tony Heathcote (Heathcote), the victim. Schmid's prior marriage

had produced a daughter, and, on March 2, 2001, Schmid was informed that Heathcote allegedly had molested her daughter. Upon receiving this news, Schmid became very upset. Two days later, on March 4, 2001, Schmid and Heathcote were having sexual relations at their home using restraints, a dog collar, a leash, and a blindfold when Heathcote suggested that Schmid play the part of the little girl and Heathcote would play the part of the daddy. This statement caused Schmid to think of her daughter. At that time, Schmid obtained a knife and began stabbing Heathcote who was blindfolded and restrained at the ankles. Heathcote was stabbed thirty-nine (39) times and died. Later, Schmid indicated that at the time of the stabbing she had heard a voice telling her that she was the messiah and that Heathcote was evil and needed to be eliminated. Following a jury trial, Schmid was convicted with verdicts of guilty but mentally ill. This appeal ensued.

### DISCUSSION AND DECISION

#### I. MOTION TO CONTINUE

Schmid first contends that the trial court erred by denying her motion to continue the trial. Rulings on non-statutory motions for continuance are committed to the sound discretion of the trial court and will be reversed only for an abuse of that discretion and resultant prejudice. *Watson v. State*, 776 N.E.2d 914, 920 (Ind. Ct.App.2002). An abuse of discretion occurs where the court's decision is clearly against the logic and effect of the facts and circumstances. *Id.* "Continuances sought shortly before trial to hire a new attorney are disfavored because they cause substantial loss of time for jurors, lawyers and the court." *Perry v. State*, 638 N.E.2d 1236, 1241 (Ind.1994). In general, continuances for additional time to prepare for trial are disfavored as well, and trial courts are

cautioned against granting such motions unless good cause is shown and a continuance is in the interest of justice. *Jackson v. State,* 758 N.E.2d 1030, 1033 (Ind.Ct. App.2001).

| March 6, 2001 | Charges filed |
| March 7, 2001 | Public defender appointed |
| May 20, 2002 | Jury trial scheduled for September 30, 2002 |
| August 8, 2002 | Private counsel files appearance |
| August 19, 2002 | Private counsel files motion to continue trial. |

As shown by the timeline, private counsel requested a continuance of the trial 17 months after the case had commenced and just over a month before the trial was scheduled to begin. Thus, at the time private counsel entered his appearance on Schmid's behalf, the case had been pending for quite some time. In addition, Schmid had the benefit of appointed counsel during the pendency of the case, and they had adequate time to prepare for trial. Therefore, the trial court properly exercised its discretion in denying Schmid's motion to continue.

■ Moreover, Schmid's right to have counsel of her choosing assist in her defense was not impaired by the trial court's denial of her motion to continue. The Sixth Amendment guarantees a criminal defendant's right to have the assistance of counsel for his or her defense. *Lewis v. State,* 730 N.E.2d 686, 688 (Ind.2000). A corollary of this right is the defendant's right to choose counsel when he or she is financially able to do so. *Id.* at 688–89. However, the right to counsel of choice is not absolute; rather, it is well settled that the right to counsel of choice must be exercised at the appropriate stage of the proceeding. *Id.* Schmid failed to exercise her right to counsel of choice at the appropriate stage of the proceeding. It is generally neither appropriate nor advisable to hire new counsel for a case that has been pending for seventeen months with a jury trial set in just over thirty days. Furthermore, although the trial court denied her

A timeline of the events relevant to this issue is as follows:

motion to continue the trial, the court gave Schmid the option of (1) going to trial with private counsel; (2) going to trial with appointed counsel; or (3) going to trial with all counsel. Schmid chose to retain all counsel, both private and appointed, to represent her at trial. Thus, Schmid's claim that she was denied her right to proceed with counsel of her choice is unsupported by the facts.

Additionally, there is no basis for Schmid's claim that the trial court should have continued her case in order to allow her private counsel time to prepare based upon the complexity of the insanity defense and the number of expert witnesses involved. Because she chose to be represented by both private counsel and appointed counsel, she was given the unique opportunity to have her new, private counsel provide a different perspective on the issues while at the same time maintaining her appointed counsel who had been working on the case from the outset, including the insanity defense and the testimony of the expert witnesses. Thus, Schmid has shown neither that the trial court abused its discretion by denying her motion to continue nor that she was prejudiced by the denial.

## II. SUFFICIENCY OF THE EVIDENCE

Schmid next asserts that the evidence presented by the State at trial to support her convictions was insufficient. Specifically, she claims that her convictions can-

not be upheld because the evidence supports the conclusion that she was legally insane at the time of the murder.

Our standard of review with regard to sufficiency claims is well settled. We neither weigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence favorable to the verdict and all reasonable inferences which can be drawn therefrom. *Newman v. State,* 677 N.E.2d 590, 593 (Ind.Ct.App. 1997). If there is substantial evidence of probative value from which a trier of fact could find guilt beyond a reasonable doubt, we will affirm the conviction. *Id.* Moreover, we are mindful that the trier of fact is entitled to determine which version of the incident to credit. *Barton v. State,* 490 N.E.2d 317, 318 (Ind.1986), *reh'g denied.*

■ Schmid relied upon the insanity defense at trial. The statutory defense of insanity is set forth in Ind.Code § 35–41–3–6, as follows:

(a) A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense.

(b) As used in this section, "mental disease or defect" means a severely abnormal mental condition that grossly and demonstrably impairs a person's perception, but the term does not include an abnormality manifested only by repeated unlawful or antisocial conduct.

At trial, the burden rests with the defendant to prove, by a preponderance of the evidence, the defense of insanity. I.C. § 35–41–4–1(b). The determination of sanity is a question for the trier of fact. *Maxwell v. State,* 731 N.E.2d 459, 463 (Ind.Ct.App.2000), *trans. denied,* 741 N.E.2d 1254. In making this determination, the trier of fact is free to disregard the testimony of experts and rely upon

that of lay witnesses. *Id.* Moreover, we note that not all mental conditions are serious enough to relieve one of criminal responsibility. *Gambill v. State,* 675 N.E.2d 668, 673 (Ind.1996). A diagnosis of mental illness is not in itself a defense to a crime; rather, to rise to the level of a defense, the illness must be so severe as to render the defendant unable to appreciate the wrongfulness of the criminal conduct. *Id.; see also* Ind.Code § 35–41–3–6.

■ On appeal, a defendant who claims that her insanity defense should have prevailed at trial is in the position of one appealing from a negative judgment. *Gambill,* 675 N.E.2d at 672. Furthermore, the standard of review is a deferential one because the jury makes the determination as to sanity. *Maxwell,* 731 N.E.2d at 463. As such, the judgment will be reversed only when the evidence is without conflict and leads to a conclusion opposite that of the trier of fact. *Id.*

■ At the trial of this cause, two court-appointed psychiatrists testified, as well as one psychiatrist hired by the State and one hired by the defense. Doctors Desai and Rahdart were appointed by the court to examine Schmid and render an opinion as to her sanity at the time she committed this offense. Both doctors found that Schmid suffers from mental illness, and both came to the conclusion that she was not able to appreciate the wrongfulness of her actions at the time of the crime. However, Dr. Desai also testified that although Schmid "blacked out" during this incident, this did not occur until after she had stabbed Heathcote one or two times. Appellant's App. at 628. He stated that until that time, Schmid knew what she was doing. Dr. Rahdart further testified that he "struggled with" the question of whether Schmid was sane at the time of the crime. Appellant's App.

at 689. In addition, Dr. Coons, who testified on behalf of the defense, also found that Schmid suffers from mental disease and that she was legally insane at the time of Heathcote's murder.

In contrast, Dr. Crane testified on behalf of the State and stated that, in his opinion, Schmid was sane at the time of the murder. Dr. Crane based his opinion on several factors, including that Schmid remembered stabbing Heathcote once or twice; she remembered wrestling with Heathcote; she recalled the events leading up to Heathcote suggesting a sexual role-play in which Schmid would be the little girl and Heathcote would be the daddy; and she remembered thinking of her daughter whom Heathcote allegedly molested. Additionally, Dr. Crane thought it was noteworthy that Schmid changed her clothes prior to leaving the murder scene, obtained her keys and purse and drove to her mother's house, as well as the fact that she did not mention the idea of her as the messiah and Heathcote as evil until she was detained in jail. Further Dr. Crane believed to be significant Schmid's statements to her mother that she had killed Heathcote, that Heathcote would "never hurt [her] baby again," and that Heathcote "got what he deserved." Appellant's App. at 776 and 779. Finally, Dr. Crane also noted Schmid's awareness of significant events, such as the fact she had stabbed Heathcote numerous times and her mother calling 9–1–1.

In addition to the testimony of Dr. Crane, there was further evidence regarding Schmid's behavior prior to and following the crime that undermines Schmid's claim of insanity. For instance, at a Christmas gathering in 2000, just a few months prior to Heathcote's murder, Heathcote's aunt witnessed Schmid point her finger at Heathcote and state "one of these [days] I will kill you." Appellant's

App. at 437. Heathcote's aunt further testified, "the way [Schmid] said it just didn't seem right." Appellant's App. at 437. Russell York, a tattoo artist who worked for Heathcote and Schmid at their tattoo shop, testified that two days before Heathcote's murder Schmid came to the shop in a distraught state and told him that "something bad had happened" and that "the shit's gonna hit the fan." Appellant's App. at 467.

Moreover, Heathcote's father, George Heathcote, testified to Schmid's behavior on the day of the murder. He helped Heathcote and Schmid move on the day of the murder, and he spent several hours alone with Schmid moving things and listening to her talk about her work as a phlebotomist and how much she liked her job. Further, Schmid's co-workers from the hospital where she was working as a phlebotomist in training at the time of the murder testified to her exceptional work performance. Schmid's mother testified that upon Schmid's arrival at her home following the murder, Schmid stated "I killed Tony," Appellant's App. at 358, and "[h]e'll never hurt my baby again." Appellant's Appendix at 365. The jury also heard testimony from Schmid's brother who stated that Schmid told him she stabbed Heathcote and that Heathcote got what he deserved.

The jury was free to rely on any one of these pieces of evidence, as well as Dr. Crane's testimony, and to disregard the testimony of the other expert witnesses as to Schmid's sanity at the time she killed Heathcote. Therefore, the evidence does not lead to a conclusion opposite that of the trier of fact in this case; thus, we will not invade the province of the jury. *See Maxwell*, 731 N.E.2d 459 (where medical experts testified that defendant was insane at time of crime, but lay witnesses testified to behavior prior to crime, jury found de-

fendant guilty but mentally ill and court of appeals affirmed); *see also Gambill*, 675 N.E.2d 668 and *Barany v. State*, 658 N.E.2d 60 (Ind.1995).

## III. ADMISSION OF EXPERT TESTIMONY

As a third claim of error, Schmid argues that the trial court erred by admitting the testimony of Dr. Crane, the State's expert witness. Particularly, Schmid maintains that there was not a sufficient foundation for the admission of Dr. Crane's testimony as an expert on the issue of sanity.

A trial court has broad discretion in ruling on the admissibility of evidence, and absent an abuse of that discretion, we will not disturb the trial court's decision. *Sparkman v. State*, 722 N.E.2d 1259, 1262 (Ind.Ct.App.2000). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Gibson v. State*, 733 N.E.2d 945, 951 (Ind. Ct.App.2000). Further, a claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected. *Sparkman*, 722 N.E.2d at 1262. To determine whether a substantial right of a party has been affected, we assess the probable impact of the evidence upon the jury. *Id.* When there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction, the substantial rights of the party have not been affected, and we deem the error harmless. *Robinson v. State*, 730 N.E.2d 185, 196 (Ind.Ct. App.2000), *trans. denied*, 741 N.E.2d 1253. This is the harmless error analysis to which we subject a trial court's admission of evidence. *Id.*

Indiana Rule of Evidence 702(a) provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." In the present case, the State called Dr. Crane, a psychiatrist with more than thirty years of experience, to testify about his evaluation of Schmid with regard to the issue of her sanity at the time of the offense. Schmid objected to the admission of Dr. Crane's testimony based upon a lack of foundation for an expert opinion. The underpinning of Schmid's objection was Dr. Crane's testimony that "psychiatry is a very inexact science if I could even call it a science" and that "frankly common sense is really probably the best approach to psychiatry anyhow, and trying to then figure out or distill out the facts that are known and then try and come up with an educated guess. We in the field of psychiatry make educated guesses, we don't know and so we're making an educated guess as to what was going on in the mind of the defendant at the time of the alleged crime." Appellant's Appendix at 755 and 756. Schmid argues that an "educated guess" does not rise to the level of knowledge, skill, experience, training or education needed to render an expert opinion in court.

The trial court properly exercised its discretion by admitting Dr. Crane's opinion as to Schmid's sanity. Dr. Crane was specifically asked if he could give an opinion to a reasonable medical certainty regarding Schmid's sanity at the time of the crime. He answered in the affirmative and gave his opinion. Dr. Crane did not aver that he, alone, made educated guesses; rather, he explicitly stated that psychiatry is an inexact science and that everyone involved in the field of psychiatry makes these types of "guesses." From his

testimony, it is understood that this is the inherent nature of this particular field of medicine. Therefore, this so-called guessing should not disqualify a psychiatrist's opinion from a court of law because an opinion of a well-qualified psychiatrist is still helpful to the jury in making a determination about a defendant's sanity, as well as other issues of the mind. Moreover, because every psychiatrist's opinion involves guesswork, it follows that the other three psychiatrists who testified at Schmid's trial also engaged in this type of guesswork in reaching their own opinions as to her sanity. The trial court committed no error.

## IV. JURY INSTRUCTIONS

 Finally, Schmid claims that the trial court erred by refusing to give her tendered instruction on the consequences of the different verdicts from which the jury could choose. Instructing the jury lies solely within the discretion of the trial court, and we will reverse only upon an abuse of that discretion. *Elliott v. State*, 786 N.E.2d 799, 801 (Ind.Ct.App.2003), *reh'g denied*, 792 N.E.2d 939. In reviewing a challenge to a jury instruction, the court on appeal considers three factors: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions. *Cowan v. State*, 783 N.E.2d 1270, 1276 (Ind.Ct.App. 2003), *trans. denied*, 792 N.E.2d 45. Jury instructions are to be considered as a whole, not individually, and the trial court does not necessarily abuse its discretion by giving an erroneous instruction. *Luckhart v. State*, 780 N.E.2d 1165, 1168 (Ind.Ct. App.2003). Rather, in order to conclude that the trial court abused its discretion by giving an erroneous instruction, this Court must find that the instructions taken as a whole misstate the law or otherwise mislead the jury. *Id.* Moreover, before a defendant is entitled to a reversal, he must affirmatively demonstrate that the instructional error prejudiced his substantial rights. *Hero v. State*, 765 N.E.2d 599, 602 (Ind.Ct.App.2002), *trans. denied*, 774 N.E.2d 517.

Schmid tendered to the trial court the following instruction, which the trial court refused:

You are entitled to know the consequences of your possible verdicts.

If you find the defendant guilty on any count, the judge will sentence the defendant to incarceration at the Indiana Department of Correction for a set term of years within a range set by the legislature. If the offense is suspendable, the court may suspend the sentence. The crimes of murder, aggravated battery and battery with a deadly weapon are non-suspendable.

There is really no consequence between a finding of guilty and a finding of guilty but mentally ill. If you find the defendant guilty but mentally ill, she shall be sentenced just like if she were found guilty. However, the Indiana Department of Correction would be required to evaluate and treat the defendant.

If you find the defendant not responsible by reason of insanity, the defendant would be held in custody until formal commitment proceedings were initiated. The prosecutor shall initiate temporary commitment proceedings or indefinite commitment proceedings.

If the prosecutor initiates temporary commitment proceedings, the court may commit the defendant to an appropriate facility or an outpatient therapy program for up to 180 days. If the defendant were placed in an outpatient thera-

py program, she would be subject to commitment for non-compliance.

If the prosecutor initiates indefinite commitment proceedings, the court may commit the defendant to an appropriate facility or an outpatient therapy program forever subject to further order of the court. If the defendant were placed in an appropriate facility or an outpatient therapy program, she would be subject to commitment for non-compliance.

If you find the defendant not guilty, she will be released and a health officer, police officer, friend, relative, spouse, guardian, hospital superintendent, county attorney or prosecutor may initiate indefinite commitment proceedings.

Appellant's Appendix at 114–15. Instead, the trial court gave the jury this instruction:

Whenever a defendant is found guilty but mentally ill at the time of the crime, the court shall sentence the defendant in the same manner as a defendant found guilty of the offense. At the Department of Correction, the defendant found guilty but mentally ill shall be further evaluated and treated as is psychiatrically indicated for his illness.

Whenever a defendant is found not responsible by reason of insanity at the time of the crime, the prosecuting attorney shall file a written petition for mental health commitment with the court. The court shall hold a mental health commitment hearing at the earliest opportunity after the finding of not responsible by reason of insanity at the time of the crime, and the defendant shall be detained in custody until the completion of the hearing. If, upon the completion of the hearing, the court finds that the defendant is mentally ill and either dangerous or gravely disabled, then the court may order the defendant to be committed to an appropriate facility, or enter an outpatient treatment program.

Appellant's Appendix at 172.

■■■ We will begin by evaluating the first of the three factors, the instruction's statement of the law. Here, Schmid's tendered instruction improperly states the law. The second paragraph of Schmid's instruction is inappropriate because it provides information to the jury to which the jury is to be oblivious. Generally, it is improper to instruct a jury on the penal ramifications of its verdicts. *Georgopulos v. State*, 735 N.E.2d 1138, 1141 (Ind.2000). Stated a different way, the jury must be unaware of the legislature's punishment scheme in performing its guilt-assessing task. To hold otherwise, would be to condone verdicts in which the jury might compromise, to the defendant's benefit or detriment, in order to reach a certain number of years imprisonment. *Coy v. State*, 720 N.E.2d 370, 374 (Ind.1999). Therefore, the jury should not be privy to information regarding the punishment scheme contained in the second paragraph of Schmid's tendered instruction.

■■■ Regarding the second factor, both parties agree that there was evidence in the record to support the giving of Schmid's tendered instruction. However, other problems exist to keep Schmid's instruction from the jury. For instance, the first sentence of the third paragraph of Schmid's tendered instruction is argumentative and therefore inappropriate for a jury instruction.

■■■ Further, as to the third factor concerning the information being contained in other instructions, the third paragraph of Schmid's instruction gives essentially the same information as the first paragraph of the instruction given to the jury. Finally, the remaining four paragraphs of Schmid's tendered instruction

are substantially the same as the second paragraph of the jury instruction given by the court. Although Schmid's tendered instruction is more detailed than the court's instruction, it is of no consequence. Moreover, the court's instruction precisely tracks the instruction approved by our supreme court in *Georgopulos,* 735 N.E.2d at 1146 n. 3. There, the court stated that when the verdict options before a jury include not responsible by reason of insanity or guilty but mentally ill, and the defendant requests a jury instruction on the penal consequences of the verdicts, the trial court is required to give an appropriate instruction or instructions. *Id.* at 1143. In the present case, Schmid was entitled to the instruction regarding the penal consequences of the verdict options. To that end, the trial court followed the mandate of our supreme court as set forth in *Georgopulos* and followed its sample instruction, as well. The instruction was appropriate.

## CONCLUSION

Based upon the foregoing discussion and authorities, we conclude that the trial court did not abuse its discretion by denying Schmid's motion to continue. Further, the State presented evidence sufficient to sustain Schmid's convictions, and the trial court properly exercised it discretion by admitting the opinion of the State's expert witness, as well as by refusing Schmid's tendered jury instruction.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.