Thomas N. SCHIRO, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 10A01–0701–CR–21.

Court of Appeals of Indiana.

June 19, 2008.

Transfer Denied Sept. 12, 2008.

Matthew Jon McGovern, Evansville, Indiana, Attorney for Appellant.

1. *See* IC 35–42–4–1(b).

Steve Carter, Attorney General of Indiana, Scott J. Barnhart, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Thomas N. Schiro appeals his conviction for Class A felony rape,[1] raising several issues, which we consolidate and restate as:

I. Whether the trial court erred when it denied Schiro's motion to dismiss charges brought against him in 2005 for crimes that were alleged to have occurred in 1980.

II. Whether the trial court erred when it admitted Schiro's written statements and a photograph of the victim with her daughter.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In February 1981, police found twenty-eight-year-old Laura Luebbehusen dead in her Evansville home. She had been brutally raped and murdered. Several days after police discovered Luebbehusen, Schiro admitted to the killing. Evidence at trial revealed that Schiro repeatedly raped Luebbehusen before murdering her. He beat Luebbehusen on the head with a bottle and eventually killed her by bludgeoning her with an iron and strangling her. Thereafter, he dragged her body into another room, undressed her, and sexually assaulted and bit her body in several places. Schiro stole Luebbehusen's car and returned to the Second Chance Halfway House, where he was a resident in a work release program following his conviction for robbery. Although Schiro initially

attempted to conceal his involvement, he eventually confessed to the director of the halfway house that he had killed Luebbehusen. In September 1981, Schiro was sentenced to death for felony murder, and the Indiana Supreme Court subsequently affirmed the conviction and sentence. *Schiro v. State*, 451 N.E.2d 1047, 1049 (Ind.1983), *cert. denied* 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699 (1983).

Schiro sought and was denied habeas corpus relief. *Schiro v. Farley*, 510 U.S. 222, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994); *Schiro v. Clark*, 963 F.2d 962 (7th Cir. 1992); *Schiro v. Clark*, 754 F.Supp. 646 (N.D.Ind.1990). He also petitioned for, but was denied, post-conviction relief on two occasions. Subsequently, our Indiana Supreme Court granted Schiro leave to file a successive petition for post-conviction relief, allowing Schiro to proceed with a claim for reversal of his death sentence pursuant to a 1989 case requiring an express judicial response to a jury recommendation against death.[2] On remand, the post-conviction court denied Schiro's petition. Schiro appealed, and the Indiana Supreme Court in 1996 set aside Schiro's death penalty sentence and imposed a term of sixty years. *Schiro v. State*, 669 N.E.2d 1357, 1359 (Ind.1996).[3]

Back in 1981, as a result of the publicity surrounding Luebbehusen's death, two other women, G.G. and L.S., upon seeing Schiro's picture in the news, separately contacted law enforcement. Each woman asserted that Schiro had raped her in late 1980 in separate and unrelated incidents. These rapes are the crimes underlying the current appeal. Police investigated both rapes, but because Schiro admitted to the murder of Luebbehusen and was sentenced to death, the State did not charge Schiro with the G.G. and L.S. crimes.[4] However, following the 1996 reversal of Schiro's death sentence, the State reopened the investigation of the G.G. and L.S. cases in 1996 or 1997, but could not locate L.S. Because the State believed that proceeding simultaneously with both alleged victims would increase its chances for success at trial, the matter stalled for a period of time.[5] In 2003, police located L.S. in Kentucky. However, police were still searching for Schiro's former girlfriend, who they felt was a critical prosecution witness. Eventually, she was located in 2005.

On May 20, 2005, the State charged Schiro with Class A felony rape and Class A felony criminal deviate conduct against G.G. for acts he committed in her home on September 4, 1980; it charged Schiro with having committed the same offenses against L.S. on December 20, 1980. Schiro filed a number of motions, including a motion to dismiss on the basis that the 2005 charges denied him due process and constituted prosecutorial vindictiveness. The trial court denied Schiro's motion to dismiss.

Prior to trial, the State requested permission to enter into evidence at trial cer-

---

2. *Martinez Chavez v. State*, 534 N.E.2d 731 (Ind.1989), *modified by* 539 N.E.2d 4 (Ind. 1989); *see also Roark v. State*, 644 N.E.2d 565, 570 (Ind.1994) (trial court's sentencing statement must briefly summarize its consideration of jury recommendation against imposing death).

3. Based on good time credit and time served, Schiro was scheduled for release in February 2007. *Supp. Tr.* at 62.

4. L.S. testified for the State as a rebuttal witness in Luebbehusen's trial.

5. The State's strategy was to focus on the facts that the rapes occurred in the same apartment only months apart, the perpetrator in the first rape threatened to return, and the perpetrator of both rapes was similarly described by both victims.

tain portions of an "autobiography" written by Schiro during a mental evaluation that took place prior to the Luebbehusen trial, which chronicled rapes, sexual assaults, and other crimes. *Appellant's App.* at 275–312, 317. Schiro filed a pre-trial objection to its admission, but the trial court overruled it, determining that the letter was an admission of other crimes.

At the August 2006 jury trial, G.G. testified that on September 4, 1980, she and her eleven-year-old daughter were asleep in the bedroom of their Evansville home, when G.G. awoke to a man, whom she did not know, touching her shoulder. The assailant covered G.G.'s face with a towel and told her not to look at him. He took G.G. to the living room, where he raped and sodomized her in the presence of her daughter. The perpetrator inquired about the whereabouts of an older daughter whose picture hung on the wall, and G.G. told him she did not live at the residence. He nevertheless threatened to return. G.G. moved out of the house within a few days of the incident.

The trial evidence also revealed that, later that month, L.S. and her family moved into the home. L.S. had never met G.G. and was not aware of the rape. L.S. was married and had a nine-month-old son and a young daughter with cerebral palsy. On the night of December 20, 1980, L.S., who was four months pregnant at the time, was checking on her children when she heard a noise in the kitchen. She entered the kitchen and found an unknown man, later identified as Schiro, warming his hands over the stove. L.S. thought that he was a friend of her husband's, who had just left for the grocery store. L.S. informed the man that her husband would be back shortly, and she returned to her son's bedroom. Schiro entered the room, covered her mouth, and threatened to injure the children if she screamed. He directed her to remove her glasses and then he forced her to have anal sex. Then he took her to the bedroom and vaginally raped her. Schiro covered L.S.'s eyes, but she was able to get a "pretty good" view of him. *Tr.* at 375. When her husband returned home, she yelled to him, and he chased Schiro out of the back of the house. Although her husband pursued him, Schiro escaped.

During the trial, the State offered selected pages of Schiro's autobiography into evidence as exhibits, and Schiro objected. The trial court overruled the objections and admitted the redacted documents. During trial, the court also admitted, over Schiro's objection, a photograph of L.S. and her disabled daughter.

Following trial, Schiro was found guilty of rape and criminal deviate conduct for acts committed against L.S., but not guilty of the charges as they pertained to G.G. The trial court determined that it could not enter judgment for the criminal deviate conduct conviction because the statute of limitations had run. The trial court then entered a conviction for the rape of L.S., and it imposed a forty-year sentence. Schiro now appeals.

## DISCUSSION AND DECISION

### I. Denial of Motion to Dismiss

In his pre-trial motion to dismiss, Schiro sought to have the 2005 rape and criminal deviate conduct allegations dropped, arguing that the State's delay in bringing the charges against him violated his due process rights under the Fifth Amendment to the United States Constitution and that it constituted prosecutorial vindictiveness. Following briefing and argument, the trial court denied the motion. It is well-settled that a defendant has the burden of proving, by a preponderance of the evidence, all facts necessary to support

a motion to dismiss. *Barnett v. State,* 867 N.E.2d 184, 186 (Ind.Ct.App.2007), *trans. denied; Harris v. State,* 824 N.E.2d 432, 436 (Ind.Ct.App.2005); *Johnson v. State,* 810 N.E.2d 772, 775 (Ind.Ct.App.2004), *trans. denied.* Because Schiro appeals from a negative judgment, we will reverse only if the evidence is without conflict and leads inescapably to the conclusion that he is entitled to a dismissal. *Barnett,* 867 N.E.2d at 186; *Harris,* 824 N.E.2d at 436.

## A. Due Process

Schiro claims that the length of time between the commission of his offenses and his indictment was excessively long in violation of the Due Process Clause of the Fifth Amendment. Generally, prosecutors are invested with broad discretion in the decision of such matters as when to prosecute and are not under any duty to bring charges as soon as probable cause exists. *Harris,* 824 N.E.2d at 438; *Allen v. State,* 813 N.E.2d 349, 368 (Ind.Ct.App. 2004), *trans. denied; Koke v. State,* 498 N.E.2d 1326, 1332 (Ind.Ct.App.1986), *trans. denied* (1987). However, the discretion is not limitless.

The Due Process Clause of the Fifth Amendment protects defendants against excessive pre-indictment delay. *Marshall v. State,* 832 N.E.2d 615, 626 (Ind.Ct.App.2005), *trans. denied.* Ordinarily, a charge filed within the statutory limitations period will be considered timely. *Harris,* 824 N.E.2d at 436; *Koke,* 498 N.E.2d at 1331. However, if the prosecution deliberately utilizes delay to strengthen its position by weakening that of the defense or otherwise impairs a defendant's right to a fair trial, an inordinate pre-indictment delay may be found to violate a defendant's due process rights. *Harris,* 824 N.E.2d at 436–37. To obtain relief, a defendant must first demonstrate that he suffered actual and substantial prejudice

to his right to a fair trial. *Allen,* 813 N.E.2d at 366. Should a defendant overcome that burden, he must then demonstrate that the State had no justification for the delay. *Id.; see also Harris,* 824 N.E.2d at 437 (defendant must demonstrate both that (1) he suffered actual prejudice and (2) there was no justification for the delay); *Johnson,* 810 N.E.2d at 775 (same). The defendant must establish that the State delayed the indictment to gain a tactical advantage or for some other impermissible reason. *Marshall,* 832 N.E.2d at 626.

The mere passage of time between the commission of the crime and an indictment is not presumed to be prejudicial to a defendant. *Allen,* 813 N.E.2d at 366. To satisfy the threshold burden of prejudice, a defendant must make specific and concrete allegations of prejudice from the delay that are supported by the evidence. *Id.* (citing *U.S. v. Spears,* 159 F.3d 1081, 1084 (7th Cir.1998), *cert. denied* 528 U.S. 896, 120 S.Ct. 228, 145 L.Ed.2d 191 (1999)). According to the 7th Circuit *Spears* Court,

> [A] defendant must do more than show that a particular witness is unavailable and that the witness' testimony would have helped the defense. He must also show that the witness would have testified and withstood cross-examination, and that the jury would have found the witness credible.

159 F.3d at 1085–86 (internal citation omitted).

### 1. Prejudice Caused by the Delay

In this case, Schiro claims he was prejudiced because the delay precluded him from calling his parents as alibi witnesses, as one had died and one was in poor health and lived out of state. As the State observes, these witnesses were only relevant to the charges involving G.G., not L.S. Furthermore, "other than his asser-

tions in his unverified motion, [Schiro] offered no testimony, affidavit, or depositions in support of this claim." *Appellee's Br.* at 14. In the past, we have rejected this type of argument as speculative.

For instance, in *Johnson v. State,* 810 N.E.2d 772 (Ind.Ct.App.2004), *trans. denied,* the State charged the defendant with Class A felony burglary approximately thirteen years after the offense allegedly occurred. Like Schiro, Johnson claimed that the State's delay in filing charges against him violated his right to due process under the Fifth Amendment to the United States Constitution. He claimed prejudice in that the passage of time impaired his ability to present a defense because the victim and several "potentially important witnesses" were dead. *Id.* at 775–76. However, Johnson did not explain how the dead witnesses' testimony would have helped his defense, and the *Johnson* court concluded that he failed to establish prejudice, stating,

> Johnson asks us to speculate regarding how the deceased witnesses would have helped his defense, which we will not do. Moreover, the delay has not given the State any advantage over Johnson in terms of preparing for trial; Johnson has the same access to the evidence and the surviving witnesses as the State.

*Id.* at 776; *see also Allen,* 813 N.E.2d at 366 (mere allegation that the passage of time impaired witnesses' memories is not sufficient to establish prejudice).

Similarly in *Marshall v. State,* 832 N.E.2d 615 (Ind.Ct.App.2005), the defendant claimed that the six-year delay between the commission of his offense and his indictment was excessively long in violation of the Due Process Clause of the Fifth Amendment. Marshall claimed that the delay precluded him from calling alibi

witnesses who could recall him being at work that day, and he could not use his girlfriend as an alibi witness, as she had died during his pre-indictment period. Again, we found that the defendant failed to establish prejudice. "Marshall's assertion that his dead girlfriend could have established an alibi is no more than unsupported speculation." *Id.* at 626.

■ Here, Schiro claims prejudice as a result of the diminished memory of witness Kenneth Hood, who was the director of the Second Chance Halfway House. Hood's testimony was relevant on the matter of whether Schiro was residing at Second Chance on December 20, the day of L.S.'s rape, or whether he was still incarcerated for the robbery conviction in the Vanderburgh County Jail at that time. In a January 2006 deposition, Hood read from a newspaper article published at the time of the crime, in which he was quoted as saying that Schiro arrived as a resident at Second Chance on December 22, 1980, but Hood further testified in the deposition that he could not say for certain if his statement to the reporter had been accurate and noted that Second Chance kept records of residents, but he did not know if they were still in existence. It is this uncertainty by Hood that Schiro claims prejudiced him. However, Schiro apparently did not establish that the Second Chance records did not exist or that they were exculpating. As to whether Schiro was incarcerated at the time of the rape, Schiro's former girlfriend testified at trial that Schiro would visit her in Vincennes in December 1980, which he could not have done if he were incarcerated. Lastly, the docket sheet from the Vanderburgh Circuit Court reflects that on December 11 the trial court ordered Schiro transferred to Second Chance [6] to serve the balance of

---

**6.** The docket sheet actually ordered Schiro transferred to "Rescue, Inc.," which, accord-

his sentence, and on December 12, Schiro petitioned for release from incarceration pursuant to the court's order of the previous day. *Appellant's App.* at 405. Schiro has thus not established actual or substantial prejudice stemming from Hood's dimmed memory.

Schiro also claims that he suffered prejudice because the 1980 rape kits, containing DNA evidence, had been lost or destroyed through the passage of time.[7] Initially, we observe that the use of DNA as evidence in a trial was first reported in 1991 in the case of *Hopkins v. State*, 579 N.E.2d 1297 (Ind.1991). The rape at issue occurred in 1980. Thus, even if the charges were brought in 1981, which Schiro suggests would have been the proper time, DNA evidence was not used in criminal prosecutions at that time. Regardless, Schiro claims that the DNA evidence potentially would have allowed him to show that he was not the perpetrator who raped L.S.; that is, he relies upon the possibility that the evidence could have been exonerating. He fails to recognize, however, the equal likelihood that, with the DNA evidence, the State may have been able to prove Schiro was that person. Accordingly, the absence of the rape kits does not establish an advantage to either party.

Schiro relies on our decision in *Barnett v. State*, 867 N.E.2d 184 (Ind.Ct.App.2007), *trans. denied*, for the proposition that it is the lost opportunity to pursue a defense using DNA or investigate DNA that prejudices him. As an initial matter, we find it significant to note that *Barnett* does not stand for the proposition that a defendant no longer needs to establish actual prejudice. Rather, we determined that in the circumstances of that case, prejudice exist-ed. The facts of *Barnett* present a far different situation than is present here, and although not wholly inapplicable to Schiro's case, *Barnett* does not require a different result than that reached by the trial court.

In *Barnett*, the defendant was at the time of the offense in 1993 an inmate at the Pendleton Correctional Facility ("Facility"). Barnett got into a physical altercation with a fellow inmate named Combs during a recreation session. During the fight, Barnett took a handmade knife from Combs and stabbed him. Combs died as a result of multiple stab wounds. Other cells were searched, and police recovered six similar handmade knives. Barnett was the only suspect questioned about Combs's death, even though the original investigator at the Facility created a witness list of more than thirty individuals, and the file was forwarded to the prosecutor's office. However, there was no attempt to determine ownership of the knives or possible participation by other inmates. In fact, no further investigation occurred, and although the file passed back and forth between the Facility's investigator and the prosecutor's office, no charges were filed until 2005. Barnett filed a motion to dismiss, which was denied.

On appeal, we determined that Barnett succeeded in presenting a case of prejudice caused by the delay in charging him. *Barnett*, 867 N.E.2d at 188. It appeared from the record that there were at least twenty inmates out of their cells at the time and in the area where the fight occurred. Although six similar knives were found, there was no evidence of who possessed those knives or who collected those knives, and no information as to whether more

---

ing to Schiro, was the corporation that operated the Second Chance Halfway House. *Appellant's Br.* at 14.

**7.** At that time, rape kits were retained for fifteen years. *Def.'s Ex. D, Exhibits Hearing, January 25, 2006* at 242.

than one knife was used in the stabbing that caused Combs's death. The lack of this evidence and key witnesses made it difficult, if not impossible, for Barnett to support his claim of self-defense. In addition, the record showed that the State repeatedly conceded that investigators and prosecutors made a mistake by waiting twelve years to prosecute Barnett. Under the facts and circumstances, we determined that Barnett was prejudiced by the State's unexplained and unjustified delay.

Schiro's case is distinguishable in at least two aspects. First, and completely in contrast to *Barnett*, Schiro's crimes "were fully investigated in late 1980 and into 1981." *Appellant's Br.* at 11, 19. The State obtained statements from the victims. Rape kits were prepared. Schiro was identified as the perpetrator. Second, and of particular significance, is that, in contrast to *Barnett*, the pre-indictment delay in Schiro's case was, as we explain below, justified.

### 2. Justification for the Delay

■ Even if Schiro had succeeded in persuading us that he suffered actual and substantial prejudice to his right to a fair trial, which he has not, Schiro has failed to show that the State's delay in filing the charges was inexcusable.

■ Schiro contends that it was done for tactical advantage, including to circumvent the limitation on consecutive sentences. In particular, he claims that had the State pursued the rape charges when the investigation was complete in 1981, the sentence(s) imposed would have run concurrently to the murder sentence because, at that time, a trial court could only impose consecutive sentences when it was "contemporaneously imposing two or more

sentences." *Kendrick v. State*, 529 N.E.2d 1311, 1312 (Ind.1988).[8] He suggests that the State chose to "lay [sic] in wait for Mr. Schiro to complete his murder sentence" in order to obtain an aggregate 100–year sentence (60 years for the murder conviction and 40 years for current rape conviction). *Appellant's Br.* at 20.

We are not persuaded. Schiro was convicted and sentenced to death in September 1981 for the murder of Laura Luebbehusen. In 1983, our Supreme Court affirmed the imposition of the death penalty. *Schiro*, 451 N.E.2d at 1059. Under these circumstances, it would have been a waste of taxpayer money and judicial resources to spend money prosecuting the G.G. and L.S. rape cases. Later, in 1996, the Indiana Supreme Court set aside Schiro's death penalty sentence and imposed a term of sixty years. *Schiro*, 669 N.E.2d at 1359 (Shepard, C.J., dissenting). Following this event, the prosecutor resumed an investigation into the G.G. and L.S. rapes. While police successfully located G.G., they could not find L.S. The State was not confident about trying one rape without the other, so charges were not filed. In 2003, another officer was assigned to the case, and he located L.S. Having found Schiro's former girlfriend, who the State believed was a necessary witness to the prosecution of the rapes, the State filed charges in 2005.

■ A prosecutor's belief that further investigation is warranted to solidify a case is a reason for a pre-indictment delay. *Allen*, 813 N.E.2d at 368. It is proper for a prosecutor to delay filing charges until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. *Id.* According to the record before us,

---

8. Subsequently, the limitation on imposition of consecutive sentences was amended in 1994, when it became permissible to impose consecutive sentences "even if the sentences are not imposed at the same time." IC 35–50–1–2(c).

Schiro's prosecutor felt that evidence of just one case was not sufficient to obtain a conviction. *Supp. Tr.* at 77–78 ("I basically was not comfortable going ahead with just one case.... I sincerely believe that both of these cases are related because of the ... evidence[.] ... I doubted we had enough evidence to convict him with that case alone and I didn't see any reason to go ahead and file it at the time until we got the evidence of the other one."). Thus, we find that the delay between the Supreme Court's reversal of Schiro's death sentence in 1996, and the State's filing of charges in 2005 does not, standing alone, constitute a prejudicial delay.

Schiro maintains that the State's delay was unjustified and intended to obtain a tactical advantage over Schiro. In opposing Schiro's claim, the State notes that a tactic has been defined as, "a plan, procedure, or expedient for promoting a desired end or result." *Appellee's Br.* at 22. We find nothing in the record before us to suggest that the State waited until 2005 to charge Schiro because it harbored a plan to gain a tactical advantage over Schiro or that it was motivated by some other impermissible purpose. Nor was the delay simply unexplained, as in *Barnett.* Consequently, Schiro has failed to show that the evidence is without conflict and leads to the conclusion that the State's delay in prosecuting him was without justification.

### B. Prosecutorial Vindictiveness

Schiro claims that, for many of the same reasons discussed above, the State's decision to prosecute him for the rapes after more than twenty years constituted prosecutorial vindictiveness, which the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section 12 of the Indiana Constitution prohibit. *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974); *Owens v. State,* 822 N.E.2d 1075, 1077 (Ind.Ct.App.2005).

A presumption of vindictiveness arises when the prosecution files additional charges after the accused has successfully exercised his right to an appeal. *Owens,* 822 N.E.2d at 1077. The underlying reasoning is if defendants faced the threat of more serious charges after a successful appeal, they might be less likely to exercise their right to appeal. *Cherry v. State,* 275 Ind. 14, 414 N.E.2d 301, 305 (1981); *Owens,* 822 N.E.2d at 1077 (discussing potential of chilling effect on exercise of right to appeal). Even if the presumption does not arise, a defendant may prevail by presenting direct evidence of actual vindictiveness. *Hughes v. State,* 473 N.E.2d 630, 634 (Ind.Ct.App.1985), *trans. denied.* The prosecution bears a heavy burden of proving that any increase in the number or severity of charges was not motivated by a vindictive purpose. *Cherry,* 414 N.E.2d at 305. In reviewing the trial court's decision granting or denying the dismissal of charges for prosecutorial vindictiveness, we will not reweigh the evidence or judge the credibility of witnesses. *Reynolds v. State,* 625 N.E.2d 1319, 1322 (Ind.Ct.App.1993), *trans. denied* (1994).

Inherent in the claims of prosecutorial vindictiveness are the concepts of retaliation or maliciousness.

Questions of prosecutorial vindictiveness are not easy to resolve because two antithetical interests are brought into conflict. One is the due process right of the defendant to be free of apprehension that he will be subjected to an increased punishment if he exercises his right to attack his conviction and the other is the substantial discretion traditionally accorded the prosecutor in controlling the decision to prosecute.... [T]here must be a balancing of the defendant's inter-

est against that of the state in order to protect both these interests.

*Cherry,* 414 N.E.2d at 305.

Schiro urges that a presumption of prosecutorial vindictiveness should arise in this case because the State decided to pursue the rape charges following his successful post-conviction challenge to his death sentence. We find, however, that prosecutorial vindictiveness is inapplicable to Schiro's case because, in Indiana, prosecutorial vindictiveness has been held to arise, or is otherwise discussed, where the prosecution filed additional or more severe charges against an accused *for the same basic criminal conduct* after the accused has successfully exercised his right to an appeal or after a mistrial. *See e.g., Denton v. State,* 496 N.E.2d 576, 579 (Ind.1986) (no prosecutorial vindictiveness existed because amended habitual offender charge, which was filed after original habitual offender finding was set aside following appeal, did not change theory or identity of offense charged); *Cherry,* 414 N.E.2d at 306 (prosecutorial vindictiveness existed where the State re-filed additional charges for the same criminal conduct following defendant's successful motion to correct errors); *Owens,* 822 N.E.2d at 1077–78 (prosecutorial vindictiveness existed where State brought additional charges for same conduct after defendant's successful appeal); *Hollowell v. State,* 773 N.E.2d 326, 329–30 (Ind.Ct.App.2002) (State did not engage in prosecutorial vindictiveness by dismissing case before start of trial and re-filing with additional charges because State was not trying to circumvent any adverse ruling by trial court, and defendant knew additional escape charge initial-

ly had been erroneously omitted); *Warner v. State,* 773 N.E.2d 239, 243–44 (Ind.Ct. App.2002) (prosecutorial vindictiveness existed where State filed additional charges for same criminal conduct following mistrial); *Reynolds,* 625 N.E.2d at 1321 (forgery charge brought against defendant following trial for charges related to the same criminal conduct was not product of prosecutorial vindictiveness where it had been discussed with defendant prior to trial during plea negotiations).

 Here, Schiro was not subject to a more severe sentence for the same offense nor did he face additional charges related to the same underlying offense (i.e., the murder of Luebbehusen). Rather, the 2005 charges were wholly unrelated to the murder conviction and death penalty sentence—different victims, different dates, and different charges. Schiro directs us to case law in Arizona and the United States Virgin Islands, *Appellant's Br.* at 22–23, to argue that prosecutorial vindictiveness may exist even if the newly-filed charges stem from unrelated conduct. However, Indiana has given no suggestion that it intends to extend the scope of prosecutorial misconduct to those circumstances, nor is the law otherwise in conflict on the matter. Accordingly, we see no reason to look elsewhere for guidance and are governed by the law as it now exists in Indiana, namely, prosecutorial vindictiveness occurs when new, more serious or additional charges are brought *for the same underlying conduct* after a defendant has successfully appealed. Consequently, prosecutorial vindictiveness does not apply in this case.[9] As the State sub-

---

9. We note that the 9th Circuit in *United States v. Robison et. al,* 644 F.2d 1270, 1272–73 (9th Cir.1981), determined that no prosecutorial vindictiveness existed where, as here, different and unrelated charges were brought against a defendant after a death penalty sen-

tence in another case was vacated. The court stated, "The mere fact that this prosecution followed the exercise of certain procedural rights in other, unrelated cases is insufficient to raise the appearance of vindictiveness[.]" *Id.* at 1273.

mits, and as we agree, "[t]he charges were not pursued to punish him for the reversal, but were done to achieve the interests of justice associated with the previous rapes that became relevant after his death sentence was reversed." *Appellee's Br.* at 24. "[T]he need to subject the victims and other witnesses to the often agonizing judicial system was minimal and not necessary ... [and] only became necessary when the death sentenced was foreclosed." *Id.*

Here, the State did not file additional or more severe charges for the same criminal conduct that led to his murder conviction and for which he exercised his successful appeal, and the State had a legitimate right to file the rape charges. The fact that they were filed after his death sentence for murder had been vacated and reduced to sixty years, standing alone, does not equate with misconduct, and no evidence of a malicious or vindictive motive exists.

Schiro has failed to establish that the evidence is without conflict and leads inescapably to the conclusion that he is entitled to a dismissal. Consequently, we find no trial court error in its decision to deny Schiro's motion to dismiss on the basis of prosecutorial vindictiveness.

## II. Admissibility of Evidence

Schiro next asserts that the trial court committed reversible error by "flooding the courtroom with highly inflammatory, irrelevant, and prejudicial evidence." *Appellant's Br.* at 24. In particular, the trial court admitted into evidence, over Schiro's objections, portions of a thirty-six-page handwritten document that Schiro characterized as a "sexual autobiography," which chronicled his sexual and criminal history from childhood through 1980. *Appellant's App.* at 275–312, 317–20. The trial court also admitted into evidence, again over Schiro's objections, a photograph of L.S.

and her minor, disabled daughter seated in a wheelchair.

### A. Sexual Autobiography

Prior to trial, the State filed a request to have entered into evidence at trial, portions of Schiro's handwritten autobiography, which stated, among other things, "We moved to Blackford ... Then I started the rapes again. Only this time it was to rape." *Appellant's App.* at 273, 308. Other portions of the document described the excitement and pleasure that Schiro derived from the rapes: "The pain on [their] faces. The thrill, the excitement." *Id.* at 238. The State argued that the document contained an admission by Schiro of the current charges. It further asserted that the document was admissible under Ind. Evid. Rule 404(b), as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Following a pre-trial hearing, the trial court ruled that portions of Schiro's letter constituted an admission or evidence of other crimes that would be admissible at trial. Later, the documents were admitted at trial over Schiro's objections.

When addressing the admissibility of evidence under Evid. R. 404(b), a trial court must utilize a two-prong analysis. *Scalissi v. State,* 759 N.E.2d 618, 622 (Ind.2001). First, the trial court must assess whether the evidence has some relevancy to a matter at issue other than the defendant's propensity to commit the charged act. *Id.* Second, the trial court must weigh the probative value of the evidence against its prejudicial effect, pursuant to Ind. Evid. Rule 403. *Id.* This court will review the trial court's determination and only reverse when there is an abuse of discretion. *Id.*

As he argued before and during trial, Schiro maintains that, according to the chronology of events in the document, his reference to "the rapes" necessarily refers

to rapes that occurred before he was arrested for the prior robbery, and thus are not an admission of the rapes of G.G. and L.S. *Appellant's App.* at 317–20. Schiro also argues that the trial court should have excluded the autobiography as irrelevant and unduly prejudicial. Evid. R. 403. He further maintains that it was admitted as a character assassination and to show he acted in conformity with his character, contrary to Evid. R. 404(b). We are not convinced, however, of any error in the admission of the documents.

We agree with the State that the document represents a loose chronology[10] of Schiro's childhood through 1980. Toward the end of the document, Schiro states that he moved to "Blackford" and "started the rapes again." *State's Ex. 17, Exhibits Vol.* at 26. "Blackford" refers to a street on which Schiro lived in Evansville in 1980. *Def's Ex. B, id.* at 44. Although Schiro moved from Evansville during 1980, he returned to Evansville and lived there during the period of September 1980 through February 1981. *Id.* The rapes of L.S. and G.G. occurred in Evansville in September and December of 1980. The autobiography's admissions that Schiro raped while in Evansville, where he lived for periods in 1980 and 1981, when the Evansville rapes of G.G. and L.S. occurred, were probative, corroborating evidence of L.S.'s identification of Schiro as the perpetrator. The other admitted portions that described his excitement and desire to rape are probative on the matter of motive, namely that he was motivated to commit the rapes because of the excitement and thrill he received while committing them. We conclude that the probative value of the statements was not substantially outweighed by the danger of unfair prejudice, Evid. R.

403, and we see no error in the admission of the portions of Schiro's sexual autobiography.

*B. Photograph*

Schiro asserts that "as a further attempt to prejudice the jury" against him the State entered into evidence a photograph of L.S. and her daughter, which was taken near the time of the incident and depicted L.S. standing next to her daughter seated in a wheelchair. *Appellant's Br.* at 35. Schiro objected on the basis that the photograph was an attempt to gain sympathy and was irrelevant. The trial court overruled the objection and allowed the picture into evidence. Schiro asserts that because the danger of unfair prejudice outweighs any probative value, and in light of "the State's other attempts to prejudice Mr. Schiro," we should reverse his conviction. *Id.*

Our Supreme Court has discussed the standard of review for admission of photographic evidence:

> Because the admission and exclusion of evidence falls within the sound discretion of the trial court, this Court reviews the admission of photographic evidence only for abuse of discretion. Relevant evidence, including photographs, may be excluded only if its probative value is substantially outweighed by the danger of unfair prejudice. Ind. Evidence Rule 403[.] Even gory and revolting photographs may be admissible as long as they are relevant to some material issue or show scenes that a witness could describe orally.

*Corbett v. State,* 764 N.E.2d 622, 626 (Ind. 2002) (internal citations and quotations omitted).

---

10. In the text of the document, Schiro remarks that some events may be out of order, stating, "Some parts might be in the wrong place ... I've left alot out. I hurried writting [sic] the end of this." *State's Ex. 16, Exhibits Vol.* at 27.

In this case, the jury heard evidence that when Schiro attacked L.S., he put his hand across her mouth and instructed, "If you scream I will hurt the kids." *Tr.* at 365. The challenged picture was relevant to support the vulnerable situation that L.S. faced at that moment, being pregnant and home alone with an infant son and a disabled daughter. In addition, when the photograph was admitted, the jury had already heard testimony that L.S.'s daughter, who was present during the rape, had cerebral palsy and could not walk or talk. Thus, L.S. had already described orally that which was pictured and the danger of unfair prejudice was lessened since the photograph represented what L.S. had already explained. We find no error in the admission of the photograph. *See Corbett,* 764 N.E.2d at 626.

 Further, even if it was error to admit the photograph, reversal is only warranted if the admission affected the substantial right of a party or is inconsistent with substantial justice. *Schmid v. State,* 804 N.E.2d 174, 181 (Ind.Ct.App. 2004), *trans. denied.* If there is substantial independent evidence of guilt, a reviewing court generally will find that the error was harmless. *Id.*

Here, the jury heard evidence that L.S. observed the perpetrator, and, a few months later, recognized him when she saw his picture in the newspaper; she later identified him as her attacker, first in a photographic line-up, then in person. It also received portions of Schiro's sexual autobiography that extended through 1980 and referred to rapes in the Evansville area. Thus, even excluding the one photograph of L.S. and her daughter, which accurately represented the condition of each of them as it existed at the time of L.S.'s rape, the State presented substantial independent evidence from which the jury could reasonably infer Schiro's guilt beyond a reasonable doubt.

Affirmed.

RILEY, J., and MAY, J., concur.